LOVETT, executor, &c. *vs.* BULOID and others.

Where a testator, by the residuary clause of his will, gave, devised, and bequeathed
    to his wife, and to his child or children, all the rest and residue of his estate, share
    and share alike, and to the heirs of such child or children who might die leaving
    lawful issue; and in case either his wife or children should die without leaving
    lawful issue, then the share of such one dying to go and be divided amongst the
    survivor or survivors of them ; *Held* that the limitation over to the *survivors* of the
    class was sufficient to show that an indefinite failure of issue was not intended by
    the testator, but a failure of issue at the death of the first taker ; and that the lim-
    itation over to the surviving legatees was therefore valid.
*Held also*, that the bequest to the widow, as well as to the children, was absolute in
    its terms, subject only to the contingency of the death of the legatee without leav-
    · ing issue surviving.
And two of the testator's daughters having died leaving issue, and leaving their hus-
    bands surviving them, *Held further*, that they were entitled to an absolute estate
    and interest in their respective parts of the testator's residuary property ; and that
    after their deaths, respectively, the same belonged to their husbands ; under
    the provisions of the revised statutes relative to the distribution of intestates'
    estates.
Where a remainder, after the termination of a particular estate, is limited to certain
    specified individuals, or to the *survivors* of them, the court will refer the survivor-
    ship to the death of the testator, and not to the termination of the particular es-
    tate, where it is necessary to give effect to the probable intention of the testator in
    providing for the surviving issue of such of the objects of his bounty as may hap-
    pen to die during the continuance of the particular estate.
But it seems this rule of construction will not be applied to a case where the partic-
    ular estate is given to a class, with remainder to the survivors upon the death of
    some of the class without leaving issue.
Where the residuary estate of the testator is given to a class of persons, with re-
    mainder in the shares of such of them as die without issue, to the survivors, there
    is no benefit of survivorship, among the surviving members of the class, as to the
    share of the one of the class who has died without issue ; but the surviving mem-
    bers of the class take their respective portions of that share absolutely.

THIS was an appeal from a decree of the late assistant vice
chancellor of the first circuit.   The bill was filed by the survi-
ving executor of R. M. Steele, for a judicial construction of cer-
tain provisions of the will of the testator.   The will was made
in 1812, and the property of the testator consisted of personal
estate, entirely.   After providing for the payment of his debts,
and giving to his wife certain specific legacies and the guard

Lovett *v.* Buloid.

ianship of his children, he bequeathed his residuary property to his executors and to the survivor of them, as trustees, in trust to convert it into money and invest it upon bonds and mortgages, or in stocks; and to change such stocks and securities as often as they should deem it beneficial to his estate, and to reinvest the money in similar securities or stocks. The testator then disposed of this residuary fund as follows: "And I do hereby give, devise and bequeath to my said wife Isabella, and to my child or children, all the rest and residue of my said estate, share and share alike, and to the heirs of such child or children who may die leaving lawful issue. And in case either my wife or children should die without leaving lawful issue, then the share of such one dying to go and be divided amongst the survivor or survivors of them." He then appointed his wife, and the complainant, and P. Grim, the executrix and executors of his will. In February, 1813, the testator sailed from New-York for Bordeaux, as master of the schooner Rob. But neither he nor the vessel arrived at their port of destination, nor was either of them ever afterwards heard of. In February, 1814, the executrix and executors, assuming that the testator had been lost at sea, proved the will, and took out letters testamentary thereon, from the surrogate of New-York. The testator, at the time of his supposed death, left four daughters surviving him; all of whom were then infants. Grim, one of the executors and trustees, afterwards died; and in 1826, the widow of the testator intermarried with R. Buloid. Isabella, one of the daughters of the testator, married E. Field. Caroline L., another daughter, married W. Walker. Eliza M., the third, married L. Corning; and Emily, the other daughter, married H. W. Olcott. In March, 1838, Mrs. Corning died, leaving her husband and one child, Mary W. Corning, her mother and her three sisters all surviving her. Mrs. Buloid died a few months afterwards, without having reduced her share of the capital of her first husband's estate into possession, and without leaving any issue except the descendants of her first husband; and leaving her second husband surviving her. In 1840, Mrs. Field died, without issue; leaving her husband, her two sisters,

Lovett v. Buloid.

and her niece Mary W. Corning, the daughter of her deceased sister, surviving her. L. Corning, after the death of his first wife, married again, and died subsequent to August, 1844. By his will, which recited that his daughter Mary W. Corning was sufficiently provided for out of her grandfather's estate, he made his wife his residuary legatee. But it being afterwards suggested that he was probably under a mistake in supposing that his daughter was entitled to the share of the estate of her grandfather R. M. Steele, which would have belonged to her mother if living, the widow of L. Corning, for the purpose of rectifying that mistake, executed to Mary W. Corning a release and assignment of all right and claim to the share to which the mother of the latter, if living, would have been entitled in the estate of R. M. Steele, her deceased father.

The residuary estate of R. M. Steele, invested by the complainant as the acting executor and trustee, and which remained in his hands at the time of the filing of the bill in this cause, was about $47,000. During the lives of all the daughters of the testator, the annual income of the fund was distributed equally among the four daughters and their mother. But after the death of Mrs. Corning and her mother, and previous to the death of Mrs. Field, the income was divided into four equal shares, with the assent of Mr. Buloid, three of which shares were paid to the three surviving daughters of the testator, and the other share to the father or guardian of Mary W. Corning, for her use. And subsequent to the death of Mrs. Field, such income was divided into three equal shares ; two of which were paid to the two surviving daughters of the testator, and the other to the father, or guardian, of Mary W. Corning, for her use.

The bill in this cause was filed in 1845, and the two surviving daughters of the testator with their husbands, and R. Buloid, E. Field, Mary W. Corning, and the executors of her father, were made defendants therein. The complainant, in his bill, after setting forth the facts, as before stated, alleged that various questions had arisen in relation to the construction of the will of the testator, in reference to the disposition of his residu-

ary estate, in the contingent events which had occurred, which rendered it unsafe for him to proceed to the distribution of the fund without the direction of the court. Among other questions which had arisen, were the following : *First,* whether upon the death of Mrs. Buloid, her surviving husband, upon taking out letters of administration upon her estate, was entitled to receive her share of the residuary estate for his own benefit ? *Second,* whether Mrs. Field, who died without issue, had a life interest only, or had an absolute title to one fifth of the residuary estate ; which devolved upon her surviving husband as her personal representative ? *Third,* whether, upon the death of Mrs. Corning, her share of the estate belonged to her surviving husband, so as to authorize his executors to receive it ; and if not, whether it could be transferred to the guardian of her infant daughter ? *Fourth,* whether the two surviving daughters of the testator were entitled only to the income of their shares for life, or to the possession of the capital, or of any part thereof ? *Fifth,* whether Mrs. Buloid's and Mrs. Field's shares, or either of them, fell into the residuary estate upon their respective deaths, and subject to the limitations and provisions of the will relative to the residuary estate; or was vested absolutely in the surviving legatees? *Sixth,* whether Mary W. Corning was to be considered as one of the surviving legatees, and entitled to stand in her mother's place in the distribution of the lapsed shares of Mrs. Buloid and Mrs. Field, if their shares, or either of them, were lapsed ?

The bill further stated that each of the surviving daughters of the testator had four children ; all of whom, except one, were under fourteen years of age. And the complainant prayed that the rights of the several parties to the residuary estate might be settled, and that he might be permitted to account and pay over the fund in his hands, and be discharged from his trust; he being advanced in life, and having had charge of the estate for more than thirty years.

All the defendants, except Mary W. Corning, who was a minor, suffered the bill to be taken as confessed against them. She put in an answer, by her guardian ad litem. And the

Lovett *v.* Buloid.

cause was heard upon pleadings and proofs as to her, and upon the bill taken as confessed as to the other defendants.

The assistant vice chancellor decided that the words, " in case either my wife or children should die without leaving lawful issue," in the residuary clause of the will, referred to the death of the testator, and not to a subsequent dying without issue. He therefore declared and decreed that the widow and the four daughters of the testator having survived him, the residuary estate became vested in them absolutely, in equal shares; that upon the death of Mrs. Buloid her husband became absolutely entitled to one fifth of such residuary estate; that upon the death of Mrs. Field, her husband became entitled to another fifth of the residuary estate, and was entitled to one fifth of the income accrued subsequent to that time; that upon the death of Mrs. Corning, her husband became entitled to her fifth of the residuary estate, and to the income thereof subsequent to her death; that by his will and the assignment and release of his widow, his daughter Mary W. Corning became entitled to that fifth, and to the income thereof both before and after such assignment and release; and that the two surviving daughters, and their husbands in the right of their respective wives, were absolutely entitled to the remaining two fifths of the residuary estate, and to the income thereof from the death of the testator. A reference was directed to a master to take and state the accounts of the complainant upon these principles; and the costs of the complainant and of the guardian ad litem of the infant defendant, were directed to be paid out of the estate.

The defendant Mary W. Corning appealed from so much of the decree as declared that the residuary estate became vested in the widow and the four children of the testator absolutely, upon his death; and from so much thereof as declared that upon the death of Mrs. Field, her surviving husband became entitled to the share of the estate bequeathed to his wife, and to the income thereof subsequent to her death; and from so much thereof as declared and decreed that the several parties were entitled as in the decree was mentioned.

---
Lovett v. Buloid.
---

*C. Edwards,* for the appellant. The appellant, Mary Winslow Corning, is entitled to a whole fifth part of the residuary estate of the testator; being the original share of her mother, the late Mrs. Eliza M. Corning. The dying without issue, in the testator's will, had reference to the time of the decease of a child of the testator, not having any issue living. The infant defendant, Mary Winslow Corning, is also entitled to participate in the share of Mrs. Field, who died without issue. That share should be divided into three parts, and be distributed, one third to Mrs. Walker, one third to Mrs. Olcott, and one third to the defendant, Mary W. Corning. She is thus entitled on the ground of this third being an accruing share; and not subject to survivorship. She would be thus entitled if the court were reduced to a construction of the words of the will. The decree should accordingly give her a full fifth, and one third of Mrs. Steele's fifth. The complainant, as surviving executor, should be directed to account for the same, and its accumulations since the last payment, and he should be directed to hold the same subject to the application of the guardian of the estate of the appellant.

*Geo. T. Strong,* for the respondent. The bill was properly filed by the complainant to obtain the direction of the court; as there were various doubtful questions arising on the will. 1. Is the gift over on the death of any of the residuary legatees without issue valid, or is it void? (*Patterson* v. *Ellis' Ex'rs,* 11 *Wend.* 259. *Cutter* v. *Doughty,* 23 *Wend.* 513.) 2. Did the gift over, on the death of Mrs. Buloid leaving no other issue than those by the testator, take effect, or did her share, upon that event, vest absolutely in her representative? (1 *Pow. on Dev. by Jarman,* 178, *n.* 6. *Webb* v. *Heaving, Cro. Jac.* 416. *Preston* v. *Eagle, Willes' Rep.* 164. *Hearn* v. *Allen, Cro. Car.* 57.) 3. If it did not take effect is Mr. Buloid estopped by his acts or declarations from claiming that share? If not so estopped, as far as the principal is concerned, is he estopped as regards the income which has been distributed? If not so estopped as to the income, is it to be refunded to him out of

Lovett v. Buloid.

the estate? 4. If the gift over on the death of Mrs. Buloid took effect, was Mary W. Corning entitled to a share of it; or did it go exclusively to those who were literally the *surviving* children of the testator? 5. A similar question arises as to the share which accrued on the death of Mrs. Field. 6. Did the shares which accrued on the death of Mr. Buloid and Mrs. Field, or either of these shares, vest absolutely in the survivors, or will they or either of them, upon the death of any such survivor without issue, go over to the then survivors, in like manner as the original shares? ( *Ward on Leg.* 144, 232, 233. *Moore* v. *Godfrey*, 2 *Vern. Rep.* 620. *Feltham* v. *Faulkner*, 2 *P. Wms.* 271. *Taylor's Prec. of Wills*, 428, *n.*) 7. If these shares vested absolutely in the survivors, has Mr. Field, upon taking out letters of administration on the estate of his wife, a right to that part of the estate which devolved to her upon the death of Mrs. Buloid absolutely? (*Clancy, Husb. and Wife.* 12 *Co. Litt.* 351, *note* 304. *Squib* v. *Wyne*, 1 *P. Wms.* 378. 2 *R. S.* 75, *sub.* 29. *Jenkyns* v. *Fryer*, 4 *Paige*, 47. 2 *Pow. on Dev., by Jarman*, 212.) 8. Did Mary W. Corning take by implication, under the will of her father, the share which belonged to her mother under the will of Mr. Steele? (1 *Pow. on Dev., by Jarman*, 334, 335, *and n.* 1, 523, 524. *Ward on Leg.* 2, 10. 1 *Ves. sen.* 34.) If not, is it vested in her by the release or assignment of Mrs. Corning? Or is it vested in the executor of Mr. Corning? 9. Are Mrs. Walker and Mrs. Olcott each entitled to the income only of one fifth of the testator's estate during their natural lives? If so, how is the principal to be invested during that time? Or, are they severally entitled to the possession of the principal; and, if so, is any, and what security to be exacted of them for its repayment, if they should die without issue? (*Covenhovin* v. *Shuler*, 2 *Paige*, 132, 133. *Clarke* v. *Clarke*, 8 *Id.* 160. *Fawker* v. *Gray*, 18 *Ves.* 131.) Is it necessary that any trustee should be appointed, upon the discharge of the complainant?

The complainant was entitled to have an account taken and to be discharged fully and finally upon paying over, under the

direction of the court, the money in his hands. The bill having been filed properly, and in good faith, the complainant was entitled to his costs out of the estate; (2 *Barb. Ch. Prac.* 328;) including a counsel fee. (*Brymer* v. *Nickolls,* 2 *Hill's Ch. Rep.* 121. *Warden* v. *Burts,* 2 *McCord's Ch. Rep.* 76.) And the assistant vice chancellor having made the proper decree in the cause, the decree appealed from should be affirmed with costs.

THE CHANCELLOR. I think the assistant vice chancellor erred in supposing that the dying without issue, in the residuary clause of this will, referred to the death of any of the legatees without issue previous to the death of the testator; and that the testator intended to give to his widow, and to each of his children who survived him, an absolute estate in an undivided share of the residuary fund. Such a construction is wholly inconsistent with other provisions of the will. And if each of the legatees was to take an absolute interest in the share of the fund immediately upon the death of the testator, the special bequest of the residuary fund to the executors, in trust, to invest the same upon bonds and mortgages or in stocks, and to change such stocks and securities, and reinvest the moneys in similar stocks and securities as often as they should deem proper, would be entirely nugatory. For each of the legatees, or the widow of the testator as the testamentary guardian of the minor children, would, upon the assistant vice chancellor's construction of the will, be entitled to demand their several shares of the estate immediately upon the death of the testator; or as soon as the property could be sold and converted into money. On the other hand, if the testator contemplated the contingency of some of the legatees dying without lawful issue subsequent to his death, and only intended to give them a life estate in their shares of the residuary fund in that event, then the trust to invest the residuary fund, so as to secure the capital of the shares of the legatees who might die without issue, for the benefit of the survivors, was not only proper but absolutely necessary.

Lovett v. Buloid.

Again; the limitation of the residuary fund is to the widow and children, and to the heirs of the child or children who may die leaving issue. And though the word heirs, in this case, at the time of the making of this will, was a word of limitation only, and could not give an interest to the heirs of the children, as purchasers, it still is of some importance, to show that the testator did not intend to give an absolute title to such of the legatees as should die without issue. The limitation over to the survivors of the class, upon the death of any of the legatees without leaving issue, was not restricted to a dying without issue in the lifetime of the testator. Nor was the remainder limited upon an indefinite failure of issue; so as to give the legatee who died without having had any issue, an absolute estate in his share. For the limitation over, to the *survivors* of the class, is, according to the decision of the court for the correction of errors, in the case of *Anderson* v. *Jackson*, (16 *John. Rep.* 383,) sufficient to show that an indefinite failure of issue, was not intended by the testator; but only a failure of issue at the death of the first taker. The limitation over to the surviving legatees was therefore valid; and that part of the decree appealed from, which declares that the residuary estate of the testator was vested absolutely in the five legatees, upon the death of the testator, and that the surviving husband of Mrs. Field became entitled to her share and to the income thereof subsequent to her death, is erroneous, and must be reversed.

Where a remainder, after the termination of a particular estate, is limited to certain specified individuals, or to the survivors of them, the court will refer the survivorship to the death of the testator, and not to the termination of the particular estate, where such a construction is necessary to give effect to the probable intention of the testator in providing for the surviving issue of such of the objects of his bounty as may happen to die during the continuance of the particular estate. (*Drayton* v. *Drayton*, 1 *Dessaus. Rep.* 324. *Stringer* v. *Phillips*, 1 *Eq. Ca. Abr.* 293. *Moore* v. *Lyons*, 25 *Wend. Rep.* 119.) It is doubtful, however, whether this rule of construction can

be applied to a case where the particular estate is given to a class, with remainder to the survivors upon the death of some of the class without leaving issue. For such a construction, although it might give to the issue of one of the class who had previously died leaving issue, a part of the share of another of the class who died without leaving issue, would also give to the collateral heirs, or the personal representatives, of one who had previously died without issue, a part of the share of another who should subsequently die without issue.

Thus, in the case under consideration, such a construction would give to the child of Mrs. Corning, and to the husband of Mrs. Buloid, two-fourths of the share of Mrs. Field, who died in 1840, without issue. And if either of the surviving daughters should hereafter die without issue, the same construction would also give to the husband of Mrs. Field, as her representative, one-fourth of that share. It is evident, therefore, that such a construction would be wholly inconsistent with the intention of the testator.

I have no doubt that if the testator had contemplated the event of one of his children dying without issue, subsequent to the death of another child who had left issue, he would have provided for that case, by giving such issue a share with the surviving children. But there is no probability that he would, intentionally, have inserted a provision in his will, the effect of which would be to give to the second husband of his widow, after her death, a part of the share of one of the children who had survived her. The language of the will, however, has not given any portion of Mrs. Field's share to the issue of her deceased sister. It must therefore be distributed equally between the two surviving sisters of Mrs. Field. And there is no benefit of survivorship as to that part of the fund, even if one of those sisters should hereafter die without leaving any issue surviving her. They therefore became absolutely entitled to that portion of the trust fund, immediately upon the death of Mrs. Field; under the limitation in the will to the survivors.

It is difficult to say what the testator could have intended by limiting over the share of his wife to the survivors of the class,

Lovett *v.* Buloid.

in case she should die without leaving issue. For, whether she died before or after the testator, she could not die without leaving issue, if either of the testator's children, or any of their descendants, survived her; unless the testator had some children by a former marriage, at the time of making his will, who are now dead. The bequest to the widow, as well as to the children, is absolute in its terms; subject only to the contingency of the death of the legatee without leaving issue surviving. And there is nothing in the will restricting either of the legatees to a mere life estate in their respective shares of the residuary property of the testator, except upon the happening of such a contingency. In the events which have occurred, therefore, Mrs. Buloid and Mrs. Corning, both of whom died leaving issue, were entitled to the whole estate and interest in their respective fifth parts of the testator's residuary property. And upon their deaths respectively, the same belonged to their husbands; under the provisions of the revised statutes relative to the distribution of intestate estates. The appellant, therefore, under the assignment from the residuary legatee of her father, is entitled to one fifth of the residuary estate of her grandfather; and to the income thereof, except the income which had been paid over to her father, or to her mother during the lifetime of the latter. And the complainant, by the decree, must be directed to pay over that fifth of the estate to her, or to her general guardian, if she is still a minor, and the income thereof which has not already been paid to her father or guardian.

Although the defendant, R. Buloid, makes no claim to his late wife's one fifth of the residuary estate of the testator, he is legally entitled to it, and to the income which has not been paid over by the complainant, to the other legatees, with his assent. And if he does not wish to receive and retain it on his own account, he still may dispose of his interest therein between the two surviving daughters of the testator and the daughter of Mrs. Corning, so as to make their respective shares in the estate equal; as the testator himself probably would have done if he had contemplated the events which have occurred.

The shares of Mrs. Walker and Mrs. Olcott are still subject

to the right of survivorship between themselves, if either of them should hereafter die without leaving issue surviving her. But that contingency is very remote, as each of them has four children. And the chances of survivorship being equal, they and their husbands can give a valid consent that the complainant may pay to each her share of the estate; so that such complainant may be discharged from his trust.

The decree of the assistant vice chancellor must be reversed and modified in the parts appealed from, in conformity with this decision; and must declare the rights of the parties accordingly. And the costs, both of the appellant and the respondent, upon this appeal, must be paid out of the estate of the testator in the hands of the complainant.