CHRISTINA SHARP WYLIE, Respondent, *v.* LEVI A. LOCKWOOD, Impleaded, etc., Appellant.

The will of N., after creating a trust in his executors as to the residuary estate until his youngest child should become of age, "immediately after" that event gave said estate to his children, "or such of them as may be at that time living," to hold "as tenants in common during their respective lives."   In case either of his children should die without issue,

the will provided that his or her share should " go to the survivor or
survivors of them living at the time of such death, during their lives,"
remainder " to their issue respectively in fee." On the death of either of
the testator's children, leaving issue, to the latter was given the share
" devised for life to the parent of such issue." The testator died, leav-
ing eight children. Of these, three died without issue before the young-
est child became of age. E., one of the surviving children, died thereafter,
leaving one child, the plaintiff; then F., another child of the testator,
died intestate and unmarried. All of the survivors were then married
and had issue. In an action for partition, *held,* that plaintiff took no in-
terest in that portion of the estate in which F. had a life estate, but upon
her death her share went to the three surviving children of the testator ;
and that plaintiff was entitled only to one-fifth of the whole estate, that
being her mother's share at the time the life estate vested.

*Wylie* v. *Lockwood* (20 Hun, 377), reversed in part.

(Argued June 16, 1881 ; decided October 11, 1881.)

APPEAL from judgment of the General Term of the Supreme
Court, in the first judicial department, entered upon an order
made March 5, 1880, which affirmed a judgment, entered upon
a decision of the court on trial at Special Term. (Reported
below, 20 Hun, 377.)

This action was brought for the partition of certain real es-
tate, of which Samuel Norsworthy died seized.

Said Norsworthy died in 1828, leaving a will, the clauses
of which having any bearing upon the question in controversy
are as follows:

" *First.* As the dower of my wife will be an ample provision
for her, I direct that one-third of the rents or net income of
my real estate be paid to her quarterly, in full satisfaction of her
dower.

" *Second.* I direct that my wife continue in the occupation
of the house in which I now live, and of the furniture thereof,
until my youngest child come of age, if my said wife shall so
long continue unmarried, for the use of herself and of such of
my children as may be unmarried and choose to live with her.
Upon the marriage of my wife, or when my youngest child
shall attain the age of twenty-one years, the said furniture shall
be sold to my executors, and the money arising therefrom be
put at interest on good landed security."

"*Fourth.* After payment of my debts, all the residue of my personal property (except leasehold estates), and except such debts as may at my death be well secured by mortgage, shall be turned into money, and put at interest by my executors, in their own names, on good real security. And I hereby devise all the rest and residue of my real and personal estate (subject to the aforesaid bequest of the use of the furniture to my wife) to my executors hereinafter named, and to the survivors and survivor of them in trust, nevertheless, after paying out of the income thereof the dower of my wife, to pay and appropriate the whole of the residue of the net income in equal proportions among my said children, until my youngest child shall become of the age of twenty-one years. And I do hereby give to my said executors, and to the survivors and survivor of them, at any time before my youngest child shall attain to lawful age, full power to lease all or any part of my real estate for any term of years not exceeding twenty-one years.

"*Fifth.* Immediately after my youngest child shall become of age I give and devise the whole of my estate, real and personal, to my said children, or such of them as may be at that time living, to have and to hold to them, as tenants in common, during their respective lives. And I order and direct that in case any or either of my children should die without issue, his, her or their share shall go to the survivors or survivor of them living at the time of such death respectively, without issue, equally during their respective lives, and after his, her or their respective deaths, to their issue respectively in fee-simple. On the death of either of my said children, leaving issue, I give and devise to such issue, and to their heirs and assigns forever, the share or proportion of my estate hereinbefore devised, for life, to the parent of such issue. And I do earnestly recommend to my said children that they do agree upon and appoint one of themselves from time to time to manage, improve and conduct the concerns of the property hereby devised to them respectively, to the best advantage, and in such manner that the benefit intended to them and their issue, by this my will, may not in any way be impaired."

" *Eighth.* If any of my daughters shall marry without the consent, in writing, of my wife and the said William B. Skidmore and Burtis Skidmore, or some two of them, she shall forfeit her share of my said estate, which shall immediately pass to and be vested in her surviving sisters, who shall hold and enjoy the same during the life of my daughter, so marrying without consent ; but after her death, her children shall enjoy the share hereinbefore devised to them in the same manner as if their mother had married with consent."

The testator left eight children, three sons and five daughters, him surviving. Prior to October 13, 1843, when the youngest child became of age, the three sons died without issue. Emelia, one of the daughters, died in 1850 leaving two children, the plaintiff herein and a son who died in 1852 intestate, unmarried and without issue. Frances, another daughter of the testator, died in 1864, intestate, unmarried and without issue. At that time the three surviving daughters of the testator were married and had issue.

The Special Term decided that plaintiff was entitled to one-fourth of all the real estate of which the testator died seized. Defendant, Levi A. Lockwood, appealed from so much of the judgment entered thereon as gives to the plaintiff one-fourth instead of one-fifth, to which the appellant claimed she was only entitled.

Further facts appear in the opinion.

*E. W. Stoughton* for appellant. In construing a will, the object of the courts is to ascertain, not the intention simply, but the expressed intention of the testator. (*Abbott* v. *Middleton*, 7 H. L. C. 68.) Where plain and explicit language is used by the testator, the court, even in its solicitude to protect a lineal descendant, cannot, on a mere suspicion that the testator did not understand the language used, reject such language or give to the testator's words a meaning other than their ordinary and primary one. (1 Redf. on Wills, 439.) The court cannot remodel a will to meet a contingency not in the mind of the testator. (1 Redf. on Wills, 433 ; *Brookman* v. *Smith*,

L. R., 6 Ex. 291; 7 id. 271.) The respondent was not entitled, upon the death of Frances M. Norsworthy, to any part of the share of the testator's estate, in which Frances M. had a life estate, unless the word "children," in the fifth provision of testator's will, is construed to include grandchildren. (*Guernsey* v. *Guernsey*, 36 N. Y. 267; *Mowatt* v. *Carow*, 7 Paige's Ch. 328; 2 Jarm. on Wills, chap. 30; 1 Roper on Legacies, 68, 74; *De Nottebeck* v. *Astor*, 13 N. Y. 98; *Earl of Oxford* v. *Churchill*, 3 Ves. & Bea. 59.) The words "survivor or survivors of them" as used by the testator cannot be construed to include grandchildren. (*Wake* v. *Varah*, L. R., 2 Ch. Div. 348; *Doe* v. *Wainwright*, 5 T. R. 417, 427; *Cole* v. *Sewell*, 2 H. L. C. 186; *Smith* v. *Osborne*, 6 id. 375; *Lucena* v. *Lucena*, L. R., 7 Ch. Div. 255; *Badger* v. *Gregory*, L. R., 8 Eq. 78; *Re Palmer Trusts*, L. R., 19 Eq. 320; *Holland* v. *Alsopp*, 29 Beav. 498; *Wilmot* v. *Wilmot*, 8 Ves. 10; *Milson* v. *Audrey*, 5 id. 465; *Crowder* v. *Stone*, 3 Russ. 217; *Re Corbett's Trusts*, Johns, 591; *Re Ustricke*, 35 Beav. 338; *Brown* v. *Rainsford*, Irish R., 1 Eq. 385.) Our own courts have never gone the length of rejecting words used in their primary meaning, and substituting words of different meaning in cases like the present. (*Jackson* v. *Blanshan*, 3 Johns. 297; *Lovett* v. *Buloid*, 3 Barb. Ch. 137; *Widrig.* v. *Finster*, 18 Hun, 237; *Guernsey* v. *Guernsey*, 36 N. Y. 267; *Doe d. Cooper* v. *Townsend*, 1 Houst. [Del.] 365.) That a partial intestacy might arise under one set of events, or an inequality among testator's grandchildren under another set of events, neither singly nor together constitute a foundation for changing the strict construction of words used by a testator. (*Brown* v. *Rainsford*, Irish Rep., 1 Eq. 385.)

*Henry H. Anderson* for respondent. The manifest intent of the testator was to provide equal life estates for his children, and to leave the fee of the whole property to his grandchildren equally *per stirpes*. (*Hoxie* v. *Hoxie*, 7 Paige's Ch. 192.) That construction must be preferred which gives effect to the bequests over in every case which might occur. (*Waite*

v. *Littlewood,* L. R., 8 Ch. App. 74.) Construing the second and third clauses of section 5 together, we may read the provision as to the share of a child dying without issue, to the effect that, where such share is set free, it shall go to the other children, survivors in person or represented by issue, to be held for life by such children or in fee by such issue. (*Teed* v. *Morton,* 60 N. Y. 502, 505, 506; *Scott* v. *Guernsey,* 48 id. 106; *Waite* v. *Littlewood,* L. R., 8 Ch. App. 70, 73, 75; *Wake* v. *Varah,* L. R., 2 Ch. Div. 348; *Lucena* v. *Lucena,* L. R., 7 Ch. Div. 255; *In re Walker's Estate,* L. R., 12 Ch. Div. 205; *Church* v. *Tyacke,* id.; *In re Arnold's Trusts,* L. R., 10 Eq. 252; *Badger* v. *Gregory,* L. R., 8 Eq. 78; *Cross* v. *Maltby,* L. R., 20 Eq. 378; *Re Palmer's Trusts,* L. R., 19 Eq. 320; *Re Row's Estate,* L. R., 17 Eq. 300; *Cole* v. *Sewell,* 2 H. L. C. 186; *Hodge* v. *Foote,* 34 Beav. 349; *Low* v. *Harmony,* 72 N. Y. 408.)

DANFORTH, J. The action is for partition of real estate devised by Samuel Norsworthy. There was no dispute as to the facts, and judgment followed the prayer of the complaint. The exception is to so much of it as depends upon the construction given by the trial court to these words of the testator: "*Fifth.* Immediately after my youngest child shall become of age, I give and devise the whole of my estate, real and personal, to my said children, or such of them as may be at that time living, to have and to hold to them, as tenants in common, during their respective lives. And I order and direct that, in case any or either of my children should die without issue, his, her or their share shall go to the survivors or survivor of them living at the time of such death respectively, without issue, equally during their respective lives, and after his, her or their respective deaths, to their issue respectively, in fee simple. On the death of either of my said children leaving issue, I give and devise to such issue, and to their heirs and assigns forever, the share or proportion of my estate hereinbefore devised for life to the parent of such issue. And I do earnestly recommend to my said children that they do agree upon and appoint

one of themselves, from time to time, to manage, improve and conduct the concerns of the property hereby devised to them respectively to the best advantage and in such manner that the benefit intended to them and their issue by this my will may not in any way be impaired."

He died in December, 1828, leaving three sons and five daughters. The sons died unmarried and intestate before October 13, 1843. On that day Amelia S., the youngest child, reached the age of twenty-one years. Then the trust provided for in the earlier clauses of the will terminated, and she and her four sisters took a life estate as tenants in common by virtue of the first paragraph in the clause above quoted.

Amelia S. afterward married. Her husband died, and she also, on the 20th of May, 1850, leaving one child, Christina, who married George S. Wylie, and under the name of Christina Sharp Wylie is the plaintiff herein. Frances M., another of the testator's daughters, died intestate and unmarried August 26, 1864, leaving her surviving three sisters, all of whom were married and had issue.

The only question upon this appeal is, whether the plaintiff has, under the will, an interest in that part of the testator's property in which the said Frances M. was given a life estate. The judgment treats the plaintiff as taking the same rights her mother would have had, if living, and therefore entitled to one-fourth of the share dropped by Frances. On the other hand, the appellant contends that, upon the death of Frances, her share went to the three surviving daughters of the testator, and consequently that the plaintiff is entitled only to one-fifth of the whole, that being her mother's share at the time the life estate vested. In deciding this question, we get little aid from the several cases referred to by the learned counsel for the respondent. In none were the words of the testator precisely similar to the words of the will in the record before us. While, therefore, we may be instructed by the reasoning applied to the language there criticised, and find the cases useful by way of illustration, we cannot yield to any statement or conclusion if it perverts plain and explicit language of the testator. I think,

however, all of those cases recognize as the true rule of construction, that every word is to have its natural, that is to say, its ordinary, meaning, unless there is sufficient reason to the contrary to be collected from other parts of the will. (*Badger* v. *Gregory*, L. R., 8 Eq. Cas. 78; *Byng* v. *Byng*, 10 H. of L. Cas. 171.) In *Wake* v. *Varah* (L. R., 2 Ch. Div. 348), a case said by the respondent to be closely parallel to the present, we find the learned court declaring that the language of the testator should be literally interpreted by it, " unless satisfied, upon a consideration of the whole contents of the will, not only that the language used was insufficient to effect his full intention, but that the will itself afforded sufficient evidence of what his intention was." In that case it was also said to be " apparent that the testator had not used language adequate to provide for all the events for which he has expressed his intention to provide." Now, I suppose the principle above laid down goes none too far, and we are quite sure that the testator in the present case has not failed in the respect alluded to. His language is apt, and expresses an intention; we have only to declare it. Wherever we examine the phraseology used by him, we find it without obscurity, and adapted to define the share of bounty designed for the several classes enumerated in this clause. The whole will shows he had in his mind from the beginning to the end of its dictation, from the first line to the last, his children and their children, but each class in its own place. We are unable to find any context or any language in the will showing an intention to use the words indifferently or alternately, or give to them any other than their plain, primary and common meaning. They are arranged with a precision which indicates an intention to confine the first to his immediate offspring, or nearest, as distinguished from a remote descendant, and enlarge the other to take in their increase, or his lineal descendants. By the first sentence in the will he relieves the land of dower; the second preserves the house in which he then lived, and its furniture, " until " (in his words) " my youngest child comes of age, for the use of my wife and of such of my children as may be unmarried and choose to live with her;" the third directs

his executors to make an inventory of his estate, "and deliver a copy thereof  *  *  *  to each of my children," distinguishing the articles left "in my house for the use of my wife and such of my children as may reside with her ; " the fourth clause creates a trust in his executors, after making certain payments from the income of his estate, "to pay and appropriate the whole of the residue of the net income, in equal proportions, among my said children, until my youngest child shall become of the age of twenty-one years," with power to lease until "my youngest child shall attain to lawful age." No one can doubt who were intended by these words of description or relationship. He contemplates the possible marriage of some of his children, and discriminates between those and the unmarried. In other sections there is no such discrimination, but in each the limitation is plain, to his, not to their children, to his sons and daughters, not his remote descendants. When we consider the fifth section, can there be found any signs of a different intent, when the same word is employed or referred to ? Take the first paragraph of that clause. It is conceded by the respondent that it takes in the children only, and excludes the grandchildren. In the second paragraph the testator goes further : I direct in case any of my children should die without issue, her share "shall go to the survivor or survivors of them living at the time of such death respectively, without issue, equally during their respective lives, and after his, her or their respective deaths, to their issue respectively in fee-simple." Now as this is read, it is difficult to see how any paraphrase can make it plainer. Evidently the children are referred to, the same as in preceding sections or in the other part of the paragraph. If one of these children dies, her share goes to the "survivor or survivors of them," clearly meaning those of his children who are left alive, and who had already been classed with the deceased child. No other person can be so termed. Always the testator had in his mind the "living" child. There is first a gift to such of his children "as may be living" when his youngest child arrives at maturity, and here it is to the survivors "living" at the time of the death of another child without

issue. We may say, therefore, as BACON, V. C., said in *In re Stanfield* (L. R., 15 Ch. Div. 86): "With all respect to decisions which have been arrived at in cases where the court has had to deal with puzzling or ambiguous expressions, I find here no puzzle, no ambiguity." In such a case we have no right to depart from the ordinary meaning of the words. (*In re Parker,* L. R., 15 Ch. Div. 528.) Emilia, the mother of the plaintiff, died before Frances, and, therefore, never took a portion of her share. I do not see how we can put her child in the place of the testator's child. The shares of those dying without issue are thus disposed of. In the next paragraph the testator disposes of the fee, the share of those children who die and leave issue. He says: "On the death of either of my said children, leaving issue, I give and devise to such issue, and to their heirs and assigns forever, the share or proportion of my estate, hereinbefore devised, for life, to the parent of such issue." What was devised to the plaintiff's mother? That question has been answered above in setting out the clause containing the devise. Five children were living when it took effect. The plaintiff's mother was one of them. The day of the majority of the youngest child must, as we have seen, be looked to as the period of distribution, and with that in mind it seems not doubtful that the plaintiff is entitled in fee, as the mother then was for life, to one-fifth; and as the latter, by reason of her earlier death, never became entitled to any portion of the share of Frances, neither did the former. The death of one child released her share to her living sisters. The meaning of the testator would not be more evident if he had used those words of relationship instead of the words "survivor or survivors." (*Mowatt* v. *Carow,* 7 Pai. 328.)

The remaining part of the fifth clause has been referred to as throwing light upon the testator's intention. It seems immaterial for that purpose. The recommendation contained in it would apply to either construction, for in any event the interest of a child and her issue, a child or grandchild, is concerned, although in different degree. The respondent also cites the eighth clause of the will as giving some aid to his

contention. I cannot so regard it. By it the testator declares:
"If any of my daughters shall marry without the consent, in
writing, of my wife and the said William B. Skidmore and
Burtis Skidmore, or some two of them, she shall forfeit her
share of my said estate, which shall immediately pass to and
be vested in her surviving sisters, who shall hold and enjoy the
same during the life of my daughter so marrying without con-
sent; but after her death, her children shall enjoy the share
hereinbefore devised to them in the same manner as if their
mother had married with consent." He defines no interest or
estate, but a contingency, upon which such estate as the dis-
obedient child has under other portions of the will, shall be
taken from her. He does not diminish the bounty intended
for the child because of her mother's fault. Upon the mother's
death, her child is to enjoy the share before devised, in the
same manner as if that mother had not offended. In the fifth
section he says, "their issue," meaning children of his chil-
dren. In the eighth he says, "her children," meaning "issue"
of his daughter. The will is well composed. Its provisions
are clear and simple, and we find neither in it or the circum-
stances under which the testator distributed his bounty, or the
various authorities to which we are referred, any reason for
taking the testator's words in any other than their natural
sense. (*Jackson* v. *Blanshan*, 3 Johns. 297; *Jackson* v. *Staats*,
11 id. 337; *Mowatt* v. *Carow*, 7 Pai. 328; *Lovett* v. *Buloid*,
3 Barb. Ch. 137; *Guernsey* v. *Guernsey*, 36 N. Y. 267. (Some
of these cases are referred to by the late learned Chief Justice
DAVIES, in *Guernsey* v. *Guernsey*, and they, as well as the
principal case, sustain our conclusion, so far as decisions in-
volving such questions can sustain the construction given in
another.

In order to carry out the intention of the testator as declared
by him, we think the judgment appealed from, so far as it
awards to the plaintiff any part of the estate of Samuel Nors-
worthy by reason of the death of Frances Norsworthy, should
be reversed, with costs, and the case remanded to the Supreme

Court to ascertain and award to the appellant so much of said part as he is entitled to.

All concur.

Judgment accordingly.