1840.

Maurice
v.
Graham.

---

## MAURICE vs. GRAHAM.

Where the testator, subsequent to the adoption of the revised statutes, devised a house and lot to J. & E. and their heirs and assigns forever, provided they both attained the age of twenty-one, and to the survivor if only one of them attained that age, and further directed that if they both died leaving no child or children, the house and lot should go to L. and her heirs and assigns forever; *Held*, that J. & E. took determinable estates in fee in their respective moieties of the house and lot, subject to be divested in favor of the survivor if either died under age, and subject to be determined in favor of L in case J. & E. should both die without leaving issue, before or after they attained the age of twenty-one. *Held* further, that such contingent limitations over of the house and lot were both valid, under the provisions of the revised statutes.

THIS suit was brought to foreclose a mortgage given by the defendant F. P. Graham, to the complainant, upon the house and lot No. 371, Broadway, in the city of New-York. And this was an application on the part of the complainant to compel J. Titus Johnson, the purchaser of the premises at the master's sale, to complete his purchase. The premises were sold for a perfect title ; subject, however, to a lease thereof for a term of years, at an annual rent of $400. Upon investigating the title the purchaser insisted, that under the will of W. Turpin, the former owner of the premises, the mortgagor had not a perfect title to the rent and reversion.

Turpin died in 1835, seized of the premises, subject to the lease which he had previously executed. And by his will, made a short time before his death, he devised the premises as follows : " I give and bequeath to Juda Jackson, my freed colored girl, and equally to her brother Edward Butler, and to their heirs and assigns forever, provided they both live to the age of twenty-one years, or to the survivor if only one should live to attain that age, all that lot" &c. (describing the premises.) " If Juda and Edward both die leaving no child or children, in that case I leave and give the whole of this lot to my freed black woman Lucy Bates, her heirs and assigns forever. I appoint Charles Collins and his son George B. Collins, guardians to Juda Jackson and Edward Butler, with full power to demand and receive the rent of the said lot ; and after deducting five per cent for their commissions, they shall, during the life of Lucy, pay to her, the said Lucy Bates, one hundred dollars a year, to be paid to her quarterly. The whole balance of the rent shall, every quarter, be paid to Juda Jackson, to be by her applied to her own support and the support of her brother Edward." Juda Jackson attained the age of twenty-one in May, 1836, and about two years thereafter intermarried with the defendant F. P. Graham, the mortgagor. In November, 1838, she joined with her husband in a conveyance of all her interest in the premises to a third person, who the next day reconveyed

the same to Graham, the husband. Edward Butler became of age in December, 1837; and in July, 1839, he conveyed all his interest in the premises to his sister Juda, the wife of Graham. She died in September thereafter, without issue, leaving her mother, Mary Turpin, and her brother, Edward Butler, her only heirs at law. And they conveyed all their interest in the premises to F. P. Graham, who afterwards mortgaged the whole premises to the complainant.

*J. Maurice, jun.* for the complainant.

*J. Titus Johnson,* the purchaser, in person.

THE CHANCELLOR. The question which arises upon this application is, what interest or title passed to the devisees of W. Turpin, under his will; and whether the purchaser at the master's sale will, under the master's deed, obtain an absolute and indefeasible title to the premises, subject only to the incumbrance and conditions of the lease executed by Turpin before his death. The will is very inartificially drawn, and it is difficult, therefore, to say precisely what the testator intended by some of its provisions; though I think his general intention is very obvious, unless there is something in other parts of the will, which are not before me on this application, that might lead to a different construction. The will was made in April, 1833, at which time Juda was about eighteen years of age, and her brother Edward was sixteen. The testator appears to have contemplated two events, upon the happening of which the devise in fee to Juda and Edward, as tenants in common, was to be defeated, either wholly or in part: *First,* the death of one of them before both had arrived at the age of twenty-one; and in that event the estate, which is devised to both as tenants in common provided they should both arrive at the age of twenty-one, is given to the survivor. *Secondly,* the death of both without children, either before or after they arrived at the age of twenty-one; in which

event he devises the whole lot to Lucy Bates, and her heirs, in fee. It does not appear, nor is it material to the decision of this case, whether Lucy Bates is still living. For if the limitation over to her and her heirs, was ever valid, the whole estate of the mortgagor, which he has derived under Juda and Edward, is liable to be divested by the death of Edward without issue living at the time of his death; his sister Juda having already died childless.

I can see no objection whatever to the validity of this devise over, to Lucy Bates in fee, upon the happening of the contingency contemplated by the testator. It is the ordinary case of an executory devise, of the whole property in fee simple, limited upon a determinable estate in fee; in the event of the death of the first takers without leaving children. Even if the word children, in this devise, should be construed to mean issue, so as to include more remote descendants, still it would not mean an indefinite failure of issues; o as to give an estate tail to the first takers. For the revised statutes declare that a limitation over, upon the death of the first taker *without issue*, shall be construed to mean without issue living at the time of his death. (1 *R. S.* 724, § 22.) This remainder to Lucy Bates is so limited that it must vest in possession, as well as in interest, at the termination of two lives in being at the death of the testator, if it ever vests; to wit, upon the death of Juda and Edward, without children living at the time of their respective deaths. It could not, therefore, in any event, suspend the power of alienation for longer than two lives; even if this remainder in fee was not vested in interest, so as to be alienable during the lives of Juda and Edward. If these several estates and interests of Juda, and Edward and Lucy, are to be considered as legal estates, entirely separate and distinct from the direction to the persons named as guardians to receive and apply the rents and profits of the premises, the purchaser at the master's sale will not obtain a good title to the whole premises. For he will have to take the title subject to the contingency of its being divested, in favor of Lucy Bates or her heirs, in

case of the death of Edward without leaving issue at the time of his death. And if it should be held that the legal title to the whole premises was intended to be given to the persons named as guardians, during the lives of the three persons beneficially interested in the rents and profits, that would be still more fatal to the title of the purchaser. For it might render the whole devise void, as a suspension of the power of alienation for more than two lives in being ; according to the decision of the court for the correction of errors in the case of Lorillard's will. Or, at least, it would render the estates or interests of the several persons beneficially interested in the rents and profits inalienable, during the continuance of the trust, under the provisions of the sixty-third section of the article of the revised statutes relative to uses and trusts. (1 R. S. 730.)

The conclusion, however, at which I have arrived, is that the testator only intended to give to the persons whom he calls guardians, the ordinary power of guardians while Juda and Edward were minors and incapable of attending to their own rights ; and that he did not intend to vest the legal title, to any part of the estate, in such guardians as trustees. He does indeed direct them to pay the annuity of $100 to Lucy Bates during her life. That, however, was only an incorrect method of expressing his intention that she should receive an annuity out of the estate, to that amount, during her life ; and that while the guardians continued to receive the rents of the premises they should pay that annuity to her, and should pay over the residue to Juda for the support of herself and her brother. It is very clear that the testator intended that Lucy Bates should receive an annuity for life out of the rents and profits of the premises. And that appears to be a valid charge upon the premises, which a court of equity would enforce. Whether that interest was or was not inalienable under the provisions of the section of the revised statutes last referred to, is a question not necessary to be decided here. But if I am right, in supposing that it was not the intention of the testator to vest the legal title in the persons named as guar-

dians, then it is a mere charge upon the rents and profits of the land, which is alienable ; and not an interest in a trust for the receipt of rents and profits, which interest cannot be sold by the cestui que trust.

The estate of the mortgagor in the premises being incumbered with this annuity, if Lucy is still living, and the presumption is that she is alive in the absence of any allegation to the contrary, that of itself would be a sufficient answer to this application. The motion of the complainant must therefore be denied, with costs, and the purchaser must be discharged from his purchase. And the premises may be re-sold by the master, subject to such claims as may exist thereon in favor of Lucy Bates for her annuity ; or in favor of her and her heirs, as devisee of the remainder in fee, in case Edward Butler should die without leaving issue surviving him.

Order accordingly.