.PATRICK J. HENNESSY, Appellant, *v.* CHARLES J. PATTERSON, as Receiver, etc., Respondent.

The will of H., devised certain premises to his wife, to be held by her " to and for the chief purpose of keeping and protecting the same for her own and " her " daughter's benefit," the same to be used " for the maintenance and support of herself and said daughter." If the widow should

remarry, the executors were empowered to take the control of the prem-
ises from her, and also the guardianship of the daughter. The will then
provided as follows: "If my said daughter Margaret should get mar-
ried, or die without leaving any children, and that her husband should
live after her death, he shall not inherit the said property or any part
thereof; but if there are any children born of my daughter, and living
after her death, the property shall be theirs. * * * Should my said
daughter Margaret die without leaving any issue, then the said property
shall be left to my nephew, John Foley." The testator's wife and
daughter survived him, after his death, first his widow died, then Mar-
garet married, then Foley died, then the daughter died without issue
surviving. In an action of ejectment, in which plaintiff claimed under
a deed from the daughter, executed after the death of the widow, *held*,
that Foley took an estate in expectancy, to wit, a contingent remainder
which vested in him as a right, according to its character, upon the death
of the testator, and which descended to his heirs; so that upon the hap-
pening of the contingency, *i. e.*, the death of Margaret without issue,
the estate vested absolutely in the heirs of Foley.

The rules of the common law applicable to such a devise and the changes
wrought by the Revised Statutes, considered and discussed.

(Argued March 4, 1881; decided April 19, 1881.)

APPEAL from judgment of the General Term of the Supreme
Court, in the second judicial department entered upon an order
made September 17, 1880, affirming a judgment in favor of
defendant, entered upon a verdict.

This was an action of ejectment brought to recover posses-
sion of certain premises situate in the city of Brooklyn.

John Foley died in 1872, seized of the premises, leaving a
will, the provisions of which, so far as they affect the premises
in question, are as follows:

"*First.* After all my lawful debts are paid and discharged,
I give and bequeath to my dear wife, Catherine Healey, the
house and lot in which I now reside, and which house and lot
I now own and which house and lot is situated on the north-
erly side of Luqueer street, in the twelfth ward, in the city of
Brooklyn, aforesaid. The said described property is to be held
by my said wife, after my death, to and for the chief purpose
of keeping and protecting the same for her own and my
daughter's benefit; provided, however, that my said wife shall
prudently use the rents and benefits, if any there may be, of
said property for the maintenance and support of herself and

said daughter; and also, that my said wife shall be and act as the sole guardian and protector of my said daughter as long as she remains unmarried; but if. she, my said wife, should get married; or otherwise commit acts contrary to the wishes of my executors herein named, then my executors shall have the power to have the control of said property taken from my said wife, and also the guardianship of my said daughter. This use and privilege of my said property to my said wife is in lieu of her dower right.

" *Second.* I also wish and will that if my said daughter Margaret should get married, or die without leaving any children, and that her husband should live after her death, he shall not inherit the said property or any part thereof; but if there are any children born of my daughter, and living after her death, the property shall be theirs, share and share alike, and managed accordingly by my executors.

" *Third.* I wish and will, that should my said daughter Margaret die without leaving any issue, then the said property shall be left to my nephew, John Foley."

The testator's widow died in 1874. His daughter Margaret thereafter married the plaintiff. Foley died in 1876, and Margaret died in 1878, leaving no issue surviving. Margaret, prior to her death, conveyed the premises to one Battersberry who conveyed to plaintiff. In an action of partition between the heirs of John Foley, defendant was appointed receiver.

*Robert Johnston* for appellant. The fee not being devised to Margaret, vested in her by descent, subject to the limitations to her issue, and John Foley. (*Rosevelt* v. *Fullerton*, 7 Cow. 79; *Schauber* v. *Jackson*, 2 Wend. 33; *Wolfe* v. *Van Nostrand*, 2 N. Y. 431.) Even if the devise to Margaret was on contingency, yet, as heir, she would take the fee by descent. (Fearne's Rem. 353; *Plunkett* v. *Holmes*, 1 Lev. 111; *Buell* v. *Southwick*, 70 N. Y. 580; *Purfroy* v. *Rodgers*, 2 Sandf. 380; *Carter* v. *Barnardiston*, 1 P. W. 505–516; 4 Kent, 257.) The remainders to Margaret's issue, and to John Foley, are both contingent. (1 R. S. 723, § 25; 3 id. [2d ed.] 573;

*Doe* v. *Holme*, 2 Bl. 777; *Luddington* v. *Kime*, 1 Ld. Raym. 203; *Goodright* v. *Durham*, Doug. 253; *Goodtitle* v. *Billington*, id. 753; *Roddy* v. *Fitzgerald*, 6 H. L. C. 832; 4 Kent, 205, note *e*; *Woodruff* v. *Cooke*, 47 Barb. 304; S. C., 61 N. Y. 638; *Barnes* v. *Hathaway*, 66 Barb. 452; *Jackson* v. *Noble*, 2 Keene, 590.) The remainder to Foley cannot answer a single test, required by the statute, of a vested remainder. (1 R. S. 723, § 10; *Moore* v. *Littel*, 41 N. Y. 93; *Savage* v. *Pike*, 45 Barb. 464; Fearne's, 216; 3 Austin [Lond. ed.], 79; *Miller* v. *Emans*, 19 N. Y. 384; *Jackson* v. *Waldron*, 13 Wend. 178; 3 R. S. [2d ed.] 573; *Barnes* v. *Allen*, 1 Bro. C. C. 181; *Pinbury* v. *Elkin*, 1 P. W. 563; *Doe* v. *Moore*, 14 East, 601; 1 R. S. 773, § 2.) The term "Estate of Inheritance" embraced every species of fee at common law, and Margaret had such an estate. (1 R. S. 722, § 2; 4 Kent, 9; *Jackson* v. *Noble*, 2 Keene, 590; *Roberts* v. *Dixwell*, 1 Atk. 607; *Baskerville* v. *Baskerville*, 2 id. 297; 1 R. S. 724, § 28; reviser's note to same section.) The testator intended the bequest to Foley should fail, if the daughter survived him. *Getting* v. *McDermott*, 2 M. & K. 69; *Elliot* v. *Davenport*, 1 P. W. 83; *Toplis* v. *Baker*, 2 Cox, 222; *Maybank* v. *Brooks*, 1 Bro. C. C. 84; *Thurber* v. *Chambers*, 66 N. Y. 42; 2 R. S., §§ 25, 66; *Van Buren* v. *Dash*, 30 N. Y. 393; *Beauclerk* v. *Dormer*, 2 Atk. 308; Roper's Leg. 706; *Lowfield* v. *Stoneham*, 1 Strange, 1261; *Hinckley* v. *Simmons*, 4 Ves. 161; *Clark* v. *Lubbeck*, 1 Yo. & Col. [C.] 492; *Webster* v. *Hale*, 4 Mad. 144; *Turner* v. *Moor*, 6 Ves. 557; *Cambridge* v. *Rous*, 8 id. 12; *Ommarey* v. *Baker*, 18 id. 557; *Wolfe* v. *Van Nostrand*, 2 N. Y. 431; *Galland* v. *Leonard*, 1 Swanst. 161; *LeJune* v. *LeJune*, 2 Keene, 701; *Hervey* v. *McLaughlin*, 1 Price, 264; *Hone* v. *Pillans*, 2 M. & K. 15; *Moore* v. *Lyons*, 25 Wend. 119; *Livingston* v. *Greene*, 52 N. Y. 118; *Kelly* v. *Kelly*, 61 id. 47; *Embury* v. *Sheldon*, 68 id. 227.) Besides hastening the vesting, the courts require the precise events designated by the will, to occur, before the bequest can be divested, by limitations over. (*Jackson* v. *Noble*, 2 Keene, 590; *Sturges* v. *Pierson*, 4 Mad. 411.) As a general rule,

contingent rights are transmissible, unless the existence of the contingentee at a given time is of the essence of the contingency, on which the right is to arise. Here the existence of Foley at Margaret's death was essential. (3 Austin [Lond. ed.], 80 ; 1 R. S. 724, § 25.) Even had the devise been to Foley and his heirs, they would not take by substitution, unless the property vested in him. (*Thurber* v. *Chambers*, 66 N. Y. 42.) When the devise is to persons as a class they can take only by substitution, if the property vests in the primary legatee. (*Christopherson* v. *Naylor*, 1 Mer. 330 ; 3 Ves. 611 ; *Giles* v. *Giles*, 8 Sim. 360 ; *Van Buren* v. *Dash*, 30 N. Y. 393.)

*John C. McGuire* for respondent. At the time of his death, John Foley's interest in the premises was a vested remainder. Such an interest is vested "where there is a person in being who would have an immediate right to the possession of the land upon the ceasing of the intermediate or precedent estate." (1 R. S. 723, § 13 [Edm. 672]; *Moore* v. *Littel*, 41 N. Y. 76 ; *Foley* v. *Foley*, 17 Hun, 238.) It may be conceded that previous to the Revised Statutes, Foley's interest in the premises at his death would be called an executory devise. (*Jackson* v. *Staats*, 11 Johns. 337; *Fosdick* v. *Cornell*, 1 id. 444.) Such an interest was devisable and descendible at common law. (*Roe* v. *Jones*, 1 H. Black. 30 ; 3 Term, 88 ; *Roe* v. *Griffith*, 1 Bl. 605 ; *Selwin* v. *Selwin*, 2 Burrow, 1131 ; *Winslow* v. *Goodwin*, 48 Mass. 374 ; 1 Redf. on Wills, 391 ; 2 Washb. on R. P. 582 [marg. 223].) The legal effect of leaving the remainder to John Foley generally, without providing for its defeat in case of his death before it vested in possession, would be that, if he died before the contingency, his heirs or devisees would take in his stead when his interest ripened into possession. (*Moore* v. *Hawkins*, 2 Eden's Ch. 341 ; *Pinbury* v. *Elkin*, 1 P. Wms. 563 ; 2 Vent. 347 ; *King* v. *Withers*, Cas. temp. Talb. 117 ; *Chauncy* v. *Graydon*, 2 Atk. 616 ; *Hodgson* v. *Rawson*, 1 Ves. Sen. 46 ; *Medlicott* v. *Bows*, id. 201 ; *Barnes* v. *Allen*, 1 Bro. C.

C. 181; *Devisne* v. *Mello,* id. 537; *Perry* v. *Woods,* 3 Ves. Jr. 204; 2 Redf. on Wills, 245; 4 Kent's Com. 7; 1 R. S. 748, § 1, Edm. 699; *Winslow* v. *Goodwin,* 48 Mass. 374.)

FINCH, J. The general intention of the testator, in this case, is very plain. Having a wife, and an unmarried daughter, he desired to secure to them during their lives the full benefit of the use and income of his property; but dreading the influence and possible selfishness of a husband of either, he aimed at a disposition which would make it impossible for such husband to obtain any interest in, or control over the estate devised. To effect this purpose, he took from the widow, in the event of her remarriage, the management of the property and also the guardianship of his daughter and vested both in his executors. In the event of the daughter's marriage, he provided that her husband should not inherit the property, nor any part thereof, and, as a mode of securing that result, he gave no estate to the daughter in express terms, but directed that upon her death it should go to her issue then living, or, in default of such issue, then to the testator's nephew, John Foley. The will was evidently intended to bar the possible interest of a successor, or son-in-law, and keep from the hands of strangers, not of the testator's blood, the property gained by his care and labor. Whatever else may be true of the case, this purpose and intention is distinct and plain, and must have its proper weight in determining the construction of the will. The claim of the plaintiff, if sustained, overrides that intention, and renders nugatory and useless the precautions of the testator; for it is the husband of the daughter who now claims the absolute ownership of the estate and seeks to wrest it from the possession of the children of the nephew.

As to the proper construction of the will the parties differ widely. The theory of the plaintiff is, that the widow had a life estate, and the daughter, Margaret, took the fee by descent, such fee subject, however, to be determined by the presence of issue living at her death, or in default of such issue living at that date, subject to the right of Foley to take the fee if he

should be living at the death of Margaret ; but that in case
both of the prescribed failure of issue, and the survivorship of
Foley at the happening of that contingency, the fee inherited
by Margaret lost its base or determinable quality, and became
a fee simple absolute, which, through Margaret's deed in her
life-time, passed as such to her husband.   In this view of the
will the devise to Foley is deemed a contingent remainder,
vesting neither in interest nor possession until the happening
of two uncertain events, viz. : the death of Margaret without
issue living, and the survival of Foley at the date of such'
death.   This construction bars utterly the heirs of Foley, and
reduces his right to a mere possibility of acquiring an estate,
which lapsed by his death in the life-time of Margaret.

The theory of the defendant is that the widow took a life es-
tate, then Margaret a life estate, with remainder in fee to John
Foley, vesting in interest at the death of the testator, and in
possession at the death of Margaret without issue living, but
liable to be divested by the existence of such issue living at her
death.   The estate of Foley is claimed to be a vested remainder,
affected in no manner by his death before Margaret, but in
that event descending to his heirs who thereby took the entire
estate.

The argument on both sides draws largely upon the provis-
ions of the common law, as explanatory of the changes effected
by the Revised Statutes, and some brief consideration of what
would have been the operation of the former upon the devise in
question may aid us in the application of the modified enact-
ments.

The first difficulty in the defendant's position, as affected by
the language of the will, would have arisen in the absence of a
precedent estate to support the remainder to Foley.   The gen-
eral rule was that no remainder could be created without a
particular estate to support it, and must have been so limited as
to take effect on the regular and natural determination of the
precedent estate.   (2 Washb. R. E. 503.)   That rule would be
fatal in the present case to the remainder of Foley, if the sole
estate preceding it was the life estate of the widow, for that

estate might end, and in fact did end before the daughter, Margaret, died, and, therefore, before the contingency upon which Foley's estate depended had occurred. If to meet this difficulty resort is had to the plaintiff's theory, that besides the life estate of the widow, there was in Margaret a qualified, base or determinable fee, coming to her by descent, we are baffled by another rule of the common law that a remainder could not be limited on a base or determinable fee which had vested in interest. (Lalor, 65.) It is possible, however, that a just construction of the will would give to Margaret a life estate by implication. The use of the property, until her death, was probably intended for her as well as her mother. While the widow lived she was to have the use of the property for the joint benefit of herself and her daughter, unless she re-married. In that event the executors were to have the control of the estate. This provision was evidently aimed at the protection of Margaret, and indicates a purpose to secure her maintenance out of the income. It may be possible, therefore, to say, as the respondent contends, that after the death of the widow, the right of Margaret to the income and profits of the estate for her support and maintenance remained. In that event, the difficulty we have mentioned would disappear, because a precedent life estate in Margaret would have remained until her death, and sustained the remainder to her issue or to Foley. If it be then objected that such devise to the daughter for life, with remainder to her issue is, at common law, turned into a fee in the daughter by the operation of the rule in *Shelley's case*, upon the ground that the word issue is used as the equivalent of heirs, and is here a word of limitation and not of purchase (*In re Sanders*, 4 Paige, 293 ; 2 Washb. on Real Prop. 569), the answer is that the rule applied only to the case of the first taker, and not to the use of the word in a case like the present. (*Cushney* v. *Henry*, 4 Paige, 345 ; citing Finch's Ch. 280, and Coke's, 263, note 15.)

If the difficulties of the common law seem thus far obviated, they become more serious as we approach a consideration of the nature and character of the devise over to Foley. Alter-

native estates, or contingencies with a double aspect, as they are sometimes called, were permissible and recognized before the Revised Statutes expressly authorized their creation. They were unobjectionable, because only one could vest, and the happening of the contingency merely substituted one for the other, and in no respect prolonged any restraint upon alienation. (*Luddington* v. *Kime*, 1 Ld. Raymond, 203 ; *Doe* v. *Holme*, 2 Black. 777.) If, therefore, Foley had been alive at the death of Margaret, it seems possible to put a construction upon the will which would have given him, at that date, even at common law, a vested remainder which would, of course, have descended to his heirs. But he died before Margaret, and whether, for that reason, his estate lapsed, or was of such character that it descended to his heirs, so that they took upon the happening of the contingency as succeeding to all his rights, becomes a very important question. Before the Revised Statutes, his estate would have been a contingent remainder, or, at least, good by way of executory devise; for, even if Margaret had not a life estate, but a base or determinable fee, so that a remainder in fee could not be limited upon it, the limitation to Foley would have been good as an executory devise. (*Jackson* v. *Staats*, 11 Johns. 348; *Sherman* v. *Sherman*, 3 Barb. 385; *Maurice* v. *Graham*, 8 Paige, 486.) Viewed in either aspect, his estate was descendible, unless his survivorship of Margaret was an element of the contingency upon which his estate was limited. (*Pinbury* v. *Elkin*, 1 Peere Williams, 563 ; *Moor* v. *Hawkins*, 2 Eden's Ch. 341 ; *Winslow* v. *Goodwin*, 48 Mass. 374.) Of contingent remainders, a very accurate writer says (Washburn on Real Property, 549) that at common law, before the contingency happens, they cannot be conveyed, except by way of estoppel; but, where the person who is to take the remainder if it becomes vested, is ascertained, and he dies, it will pass to his heirs and may be devised by him. And, as to the interest of an executory devisee, the same writer says that contingent and executory estates, and possibilities accompanied with an interest, are descendible to the heir or transmissible to the representative. (Ibid. 662.)

Of course, the rule cannot apply where the survivorship of the devisee at the happening of the contingency is itself a contingency upon which the devise is limited. That is claimed to be the situation here, and it becomes apparent that, even at common law, the one vital question in the case is whether, by the terms and intent of the will, Foley was only to take upon the contingency that he survived Margaret, in addition to the contingency that the latter should die without issue living at the date of her death.

If now we test the case by the simpler provisions and definitions of the Revised Statutes, we shall find that the same question confronts us as the pivotal point in the case. What has been said of the common-law rules shows, at least in some directions, the difficulties which the revisers sought to remove and the force and effect of the radical change which they wrought. A remainder no longer fails by reason of the determination of the precedent estate before the happening of the contingency upon which it is to vest, and a life estate in Margaret ceases to be necessary to support the remainder of Foley. A fee may be limited on a fee upon a contingency which, if it should occur, must happen within the limits of the prescribed period, so that even if Margaret took a base or determinable fee by descent the limitation over to Foley was possible. Alternative estates, where upon the failure of one to vest, the next in succession shall vest, are expressly recognized; and all future estates are made in terms descendible, devisable and alienable, like estates in possession. Not only are difficulties thus removed and doubts solved, but future estates, like that devised to Foley, are expressly authorized and defined. Estates, in respect to the time of their enjoyment, are divided into estates in possession and estates in expectancy. The latter are declared to be those in which the right of possession is postponed to a future period, and are further divided into future estates and reversions. A future estate dependent on a precedent estate is termed a remainder, and that may be either vested or contingent. It is vested, when there is a person in being who would have an immediate right to the possession of the lands

upon the ceasing of the intermediate or precedent estate and is contingent whilst the person to whom, or the event upon which it is limited to take effect remains uncertain. (R. S. Part 2, chap. 1, tit. 2, art. 1.) Tested by these definitions the estate of Foley is to be deemed a contingent remainder, vesting as a right upon the death of the testator, and in interest and possession upon the death of Margaret without issue living, unless, indeed, the survivorship of Foley is made by the terms of the will an additional and further contingency. We are thus brought again to what we have already described as the pivotal question in the case, and it is necessary now to consider it. Reliance is placed upon the mention of Foley by name without allusion to his heirs. But the omission was not material. Without such words in a devise the fee would pass unless an intent should appear in the will by express terms or necessary implication, to pass a less estate. (4 Kent's Com. 7; 1 R. S. [Edm.], § 1, p. 699.) Some stress is laid upon the language of the devise to Foley, which was in these words: "Should my daughter Margaret die without leaving any issue, then the said property shall be left to my nephew, John Foley." The argument is that the word "should" implies a contingency, and the expression "should she die," standing alone, is inaccurate, since death at some time is certain and inevitable. Therefore, it is said, the contingency referred to must be that of time; death before Foley. This construction utterly overlooks the real contingency named in the will, and substitutes, or rather adds one not there at all. The contingency named by the testator was, should she die without issue living at her death. That was the uncertainty to which he referred, and for which he meant to provide; and the word "then" plainly refers to the event; to the happening of that contingency; and not to the time at which Foley's right should commence. It is said that Foley was expected by the testator to survive Margaret, and the principal reason assigned is that Foley was named as one of the executors, and the will provided that after the death of Margaret leaving issue, the estate in them was to be "managed" by the executors. Nevertheless,

the testator might easily have contemplated the death of one or both of them, and the substitution, if necessary, of administrators with the will annexed, or of trustees. The provision itself was awkward and probably would have proved ineffectual. But if such expectation existed, it was of little consequence in view of the testator's evident intention. He meant to keep the property in the line of his blood. Preferring first his wife; then Margaret and her issue; he next casts the estate upon the nephew and his heirs, preferring them to possible husbands, or strangers to his blood.

We do not think, therefore, that, by the terms of the will, Foley's estate was limited upon the added contingency of his survival of Margaret. It follows that his right was descendible to his heirs, both at common law and under the statute, unless some other legal difficulty intervenes.

Such difficulties are suggested. The one founded upon the doctrine of the common law that the heir of a primary devisee can never take by substitution unless the estate vests in such primary devisee, we do not think has a proper application to the case before us, but if it has, will find its answer in the changed provisions of our statutes, and also in the views presently to be taken of their effect upon contingent remainders.

But a further difficulty is founded upon the denial to the estate of Foley of any descendible quality, upon the ground that it never vested in him, and was nothing, in fact, but the possibility of acquiring an estate. The logic of this view is very forcibly presented in a case similar to and yet different from the one before us, by the dissenting opinion of GROVER, J. (*Moore* v. *Littel*, 41 N. Y. 66.) The court did not concur in the reasoning, or the conclusion to which it led. Followed steadily to its logical consequences, it would apparently take out of the operation of the statute a large class of future estates, upon the ground that they are mere possibilities, and not estates at all. The collision at the bottom of that case was over the character of a contingent remainder limited to the heirs of a person then living. The majority of the court, founding their opinion upon the definitions of the Re-

vised Statutes, and their express authority, held that the children of John Jackson had, during his life, and notwithstanding the uncertainty of their ever living to be his heirs, an expectant estate which could be aliened. The dissent went upon the ground that such children, during the life of the father, had no estate at all, but only the possibility of acquiring one, which, therefore, was not the subject of a conveyance. The case differed from the one under consideration in many respects, but at least settles the question that such a contingent right as was devised to John Foley is within the definition of expectant estates, and governed by the provisions of the Revised Statutes.

It is true that to allow of title by descent there must be something to descend; and what that is, in a case of contingent remainder, which may never vest either in interest or possession, except a mere possibility of acquiring an estate, is a question which the mandate of the statute sufficiently answers, but which may also be answered on principle. John Foley had something more than a mere possibility of acquiring an estate; he had the fixed, absolute right to have the estate if the contingency occurred. That right was conferred by the will of the testator, and vested in him at the instant of the latter's death. The devisee held it as a vested right, but such a right as the contingent and uncertain character of the devise created; nevertheless a fixed and vested right, which the Revised Statutes recognize as an estate, place in the category of expectant estates, and decree shall be descendible, and which, as we have already seen, was descendible even at common law. In his chapter on executory devises Washburn reminds us of the necessity of distinguishing "between the vesting of a *right* to a future estate of freehold, the vesting of a *freehold estate* in interest, and the vesting of the same in *possession.*" (2 Washburn on Real Property, 664.)

We do not agree, therefore, with the opinion of the General Term, while we concur in the result of their decision. They held, as the respondent claims, that Foley took a vested remainder, subject to be divested by the contingency of Mar-

garet's death, leaving issue, such contingency operating as a condition subsequent. This construction drives us to give Margaret an estate for life by implication, upon a very doubtful and debatable state of facts, at the peril of holding that, after the death of the mother, the daughter had no interest in the property during the rest of her life, and was bound to surrender it and its income to Foley. We do not accuse the testator of any such unreasonable and unexplainable purpose.

Nor can we see that Foley took a vested remainder under the definition given by the Revised Statutes. The present capacity of taking effect in possession, if the possession were to become vacant, was the test at common law. (Fearne on Rem. [7th ed.] 216.) When the person to whom a remainder after a life estate is limited is ascertained, and the event upon which it is to take effect is certain to happen, the remainder is vested. (*Williamson* v. *Field*, 2 Sandf. Ch. 533.) If, at the ceasing of the precedent estate, it would be uncertain who was entitled or whether the event upon which it was limited would happen, then the remainder is contingent. (*Moore* v. *Littell, supra,* 79.) Here the event upon which Foley was to take at all was uncertain. At the death of the widow, the termination of the precedent estate, it was still uncertain if Foley would ever take, and whether he should or not depended upon a contingency yet to happen. It is possible that, by giving to Margaret a life estate after the death of the widow, the case might be brought within the rule stated in *Moore* v. *Littell* by Judge WOODRUFF, that where the same event — in this case the death of Margaret — at the same time, *eo instanti,* terminated the precedent estate, and settled the contingency, the remainder was vested. But that was said of a remainder to the heirs of one living, and we think does not fairly apply to the case before us. And, besides, the doctrine was not assented to by three of the judges, and the case was really decided upon the ground (which strongly sustains the conclusion we have reached) that the remainder was contingent, but nevertheless an expectant estate, as defined by the Revised Statutes, and as such alienable.

We conclude, therefore, in this case, that John Foley took a

contingent remainder, which vested in him at the death of the testator as a right according to its character, and which descended to his heirs, so that, upon the death of Margaret, leaving no issue, the estate vested in the defendants. The objection to the allowance in addition to costs presents no question for our review.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.