MONROE COUNTY.—HON. J. A. ADLINGTON, SURRO-
GATE.—November, 1886.

BARKER *v.* SOUTHERLAND.

## *In the matter of the estate of* JOHN MCCONVILL, *deceased.*

Testator, by his will, gave his entire estate, which consisted exclusively of
personalty, to A., to hold the same in trust during the minority of
testator's son, B. ; adding: "and *after* he" (B.) "shall arrive at the
age of 21 years, I give, devise and bequeath the same to" B.,
"his heirs and assigns forever." A subsequent clause provided: "*In
case*" B. "shall .die before arriving at the age of 21 years, *then* I
give and bequeath to C. the sum of $5,000, and all the rest . . . . of
my estate I give" . . . . to A. and four others, to be equally divided
among them. Of the beneficiaries, all of whom survived the testator,
C., A. and another residuary legatee died before B., who died an
infant.—*Held,*

1. That A., as trustee, took a vested estate, to continue until B.'s majority,
or death in infancy, and unaffected by the provisions of the R. S.,
respecting the validity of trust estates.

2. That B.'s estate was contingent, depending upon the condition precedent
of his attaining majority.

3. That the estates of all the subsequent beneficiaries vested, in right, at
the death of testator, became absolute on B.'s death, and passed to
their representatives, under 1 R. S., 724, § 25.

Hennessy v. Patterson, 85 *N. Y.*, 91—compared.

Williams v. Seaman, 3 *Redf.*, 148—discussed.

CONSTRUCTION of decedent's will, in special proceed-
ing instituted to procure a decree judicially settling the
account of A. F. Southerland, as sole trustee there-
under, and directing a distribution of the fund.

E. F. HYDE, *for trustee and others.*

SATTERLEE & YEOMAN, *and* H. L. BARKER, *for residuary legatees.*

H. H. WOODWARD, *and* E. F. WELLINGTON, *for executors of residuary legatees.*

THE SURROGATE.—In this proceeding, brought to obtain a final settlement of the account of the trustee above named, and a decree for the distribution of the trust estate, it becomes necessary to construe the will of decedent, under which the trust arose.

The material portions of that will are as follows, viz. : "I give, devise and bequeath all my estate, both real and personal, to James Cochrane, Esq., of Rochester, to hold the same in trust during the minority of my son, Andrew Stout McConvill, and after he shall arrive at the age of twenty-one years I give, devise and bequeath the same to said Andrew Stout McConvill his heirs and assigns forever."

"In case said Andrew Stout McConvill shall die before arriving at the age of twenty-one years, then I give and bequeath to Andrew V. Stout, of the city of New York, the sum of five thousand dollars, and all the rest and residue of my estate, both real and personal, I give, devise and bequeath to John Lutes, James C. Cochrane, Hiram L. Barker, John W. Kelly and John A. Colwell, to be divided among them, share and share alike."

James C. Cochrane was made sole executor of the will, and after its probate on October 4th, 1873, duly entered upon the discharge of his duty, both as executor and trustee. The will was executed on September 4th, 1873, and on September 8th, 1873, the testator died, leaving an only son, Andrew Stout McConvill, then about four years of age, and also several brothers and sisters. His estate consisted wholly

of personal property, and was valued at about $27,000. Four of the persons, named in the decedent's will as beneficiaries thereunder upon certain contingencies, have departed this life since the probate of the will, and before the beginning of this proceeding.   John W. Kelly died January 28th, 1875.   James C. Cochrane, on January 25th, 1881, and Andrew V. Stout on September 5th, 1883.   Each left a will, duly admitted to probate, disposing of his entire estate.   The executors of each appear in this proceeding.   The testator's only son, Andrew Stout McConvill, died April 20th, 1885, at the age of sixteen years.

, After the death of Mr. Cochrane this petitioner, Mr. Southerland was duly appointed sole trustee under the will.   By reason of the death of Kelly, Cochrane and Stout, before the happening of the event which would have entitled them to receive their respective interests under the will, viz. : the decease of the testator's son during minority, the following questions arise :

*First.* Did the legacy to Stout, or the residuary interests of Kelly and Cochrane lapse ?

*Second.* In case of such lapse, what disposition should be made of the lapsed portion of the fund in the distribution of the estate ?

The counsel for the decedent's next of kin insists that the rights of all the persons last mentioned to take, under the will, depended upon their surviving the death of the son, Andrew, before attaining his majority ; and that the decedent died intestate as to the sums which said beneficiaries would have received in the event of such survival.

On behalf of the residuary legatees, it is maintained

that only the legacy to Stout lapsed, and that the surviving residuary legatees, and the legal representatives of those deceased, take the entire estate.

The executors of Stout claim the right to the latter's legacy under his will.

The second of the questions above stated is answered by rules of law, well settled and easily applied, and can only become important in case the first question shall be answered in the affirmative. Whether or not the interests of Stout, Kelly and Cochrane, or either of them, lapsed through the death of the legatee during the lifetime of Andrew Stout McConvill becomes, therefore, the primary and principal subject for consideration. The intention of the testator, as disclosed by his will, must be our guide to the solution of this inquiry, and that intention is not controlled by punctuation, or strict grammatical rules (Arcularius v. Geisenhainer, 3 *Bradf.*, 64, Pond v. Bergh; 10 *Paige*, 141). It seems to be unnecessary to discuss separately the legacy to Stout and the residuary interests of Kelly and Cochrane. One is as much a future interest in personal property, within the meaning of the Revised Statutes hereinafter referred to, as is the other. They each depend upon the same contingency, to wit, the death of the son during minority. The words upon which the gift in each case depends, are these: "In case said Andrew Stout McConvill shall die before arriving at the age of twenty-one years." The word, "then," only emphasizes the event upon which the gift becomes absolute, and refers back to the words relating to the death of Andrew which precede. It is as though the testator had said: *"In*

*case of the death of my son Andrew, in that event,"* or *"in such case,* I give." The fair grammatical construction of the paragraph, with a view of ascertaining the intent of the testator would require the same effect to be given to "then," in the residuary clause as in the one relating to Stout. It cannot well be said to belong to the one more than the other. I do not think there was any intention to postpone the right to the gift, but only the time at which, if ever, it should take effect in possession; in other words, it was intended to make the rights of the legatees contingent only upon Andrew's death under age, without annexing to the gift the further condition of survivorship. *" Then"* sometimes indicates an order or succession of events (Cressons' Appeal, 76 *Penn. St.,* 21). For cases in which *"then"* has been similarly used and construed, see Bedell v. Guyon (12 *Hun,* 396, 398); Hennessy v. Patterson (85 *N. Y.,* 91); Matter of Mahan (98 *N. Y.,* 376).

Before proceeding to consider the main question, it will be of advantage to ascertain the nature of the estate which passed upon the death of the testator to the trustee, Mr. Cochrane, and to the son, Andrew. The trustee took a vested estate in possession, to continue until the son's majority or death before that time arrived. This trust, relating only to personalty, was not affected by the provisions of the Rev. Stat. in respect to the validity of trust estates (Savage v. Burnham, 17 *N. Y.,* 571; Gilman v. Reddington, 24 *id.,* 12, 13; Graff v. Bonnett, 31 *id.,* 19; Power v. Cassidy, 79 *id.,* 613). No estate could vest in the son, Andrew, unless he should live to the age of

twenty-one years.   The language of the will seems
to be plain upon this point: *"After he shall arrive at
the age of twenty-one years,* I give, devise and bequeath
the estate to him, his heirs and assigns forever."
That this is the case, is also clear upon authority (2
Wm's on Ex'rs, 6th Am. ed., 1326, 1327; 1 Roper on
Legacies, 2d Am. ed., 565; Leake v. Robinson, 2
*Merivale,* 363; Kenyon v. See, 94 *N. Y.*, 563; Wylie
v. Lockwood, 86 *N. Y.*, 291, 297; Bushnell v. Car-
penter, 92 *N. Y.*, 270, 274; Patterson v. Ellis, 11
*Wend.*, 268).

Andrew's estate was contingent upon his arriving at
the age of twenty-one years, and his right to have it
vest, either in interest or possession, was dependent
upon the same event.   Nothing could pass, therefore,
to his administrator upon his death during his minor-
ity.   Under the provisions of the Revised Statutes (1
R. S., 773, § 2), "limitations of future or contingent
interests in personal property" are made "subject to
the rules prescribed in relation to future estates in
land."   The interests of the deceased legatees, and
the rights of their legal representatives therein, must,
therefore, be determined upon the same principles as
would be applied if the decedent's estate consisted
wholly of land.

Sec. 10 defines a future estate in land as "an
estate limited to commence in possession at a future
day, either without the intervention of a precedent
estate, or on the determination, by lapse of time or
otherwise, of a precedent estate created at the same
time."   Id., 723, § 13, declares that "future estates
are either vested or contingent.   They are vested when

there is a person in being who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate. They are contingent whilst the person to whom, or the event upon which, they are limited to take effect, remains uncertain." Id., 724, § 25, is as follows: "Two or more future estates may also be created to take effect in the alternative, so that if the first in order fail to vest, the next in succession shall be substituted for it, and take effect accordingly." Under id., 725, § 35, future estates, whether vested or contingent, are descendible, devisable and alienable.

It seems plain under the foregoing definitions, as well as for the reasons before stated, that Andrew Stout McConvill took a contingent future estate, to which was annexed the condition precedent that he should live to be twenty-one years of age, before such estate could vest either in right or possession. It has been plausibly argued that each of the legatees named in the will took on the death of the testator, a vested estate, as the same is defined in § 13 above quoted. It is said that they were *persons in being* who would have an immediate right to the possession of the property upon the ceasing of the intermediate or precedent estate, and that the estate vested in the trustee was such precedent estate. On the other hand, it is maintained that the estate of each legatee was contingent while the event upon which they were limited, to wit, the death of Andrew under age, remained uncertain.

I am of the opinion that the latter is the correct view of the matter and that the estate of the son, as

well as that of each legatee was a contingent one, created to take effect in the alternative, according to the provisions of § 25 of the R. S., above quoted. The interests of the several legatees vested, in right, upon the decease of the testator to become absolute upon the death of Andrew during his minority, and liable to be wholly divested by his attaining the age of twenty-one years (Smith v. Scholtz, 68 *N. Y.*, 61; Hennessy v. Patterson, 85 *N. Y.*, 99; Kenyon v. See, 94 *N. Y.*, 568). The interests of the deceased legatees, therefore, having vested in right, passed to their legal representatives upon their respective deaths, notwithstanding the fact that, Andrew still living, their right of possession had not yet accrued (R. S., *supra*, § 35, and cases last cited). Such interests would have passed by will even at common law (Winslow v. Goodwin, 7 *Metc.*, 363, 377; Pond v. Bergh, 10 *Paige*, 140, 153; Hennessy v. Patterson, 85 *N. Y.*, 99; 2 Washb. on Real Property, 582).

The case of Hennessy v. Patterson (85 *N. Y.*, 91), seems to be similar in its facts to the present one, and decisive of it in principle. In that case, the testator devised certain premises to his wife for life, for her own and her daughter's benefit. He then provided that, if the daughter, Margaret, should marry and die leaving children, the property should go to such children, but in case of her death without issue *then* the property should be left to a nephew John Foley. The widow died after the testator; Margaret married but died childless; Foley died after the widow and before Margaret. It was held that Foley took a contingent remainder, which vested in him as a right, according to

its character, on the death of the testator; and that Foley's interest descended to his heirs and vested absolutely in them upon the death of Margaret without children.

The cases of Vincent v. Newhouse (83 *N. Y.*, 505); Delaney v. McCormack (88 *N. Y.*, 174); and Shipman v. Rollins (98 *N. Y.*, 311); cited as establishing the proposition that the interests of Stout, Kelly and Cochrane were dependent upon their surviving the death of Andrew are clearly distinguishable from the case under consideration. In those cases, the fund to be ultimately distributed was not in existence at the death of the testator, but was to be created at a subsequent period by the sale of real estate, and until the creation of the fund no estate therein could vest either in interest or possession. In Kelso v. Lorillard (85 *N. Y.*, 177), and Magill v. McMillan (23 *Hun*, 193), the further condition of survivorship was annexed to the gift, by the express language of the will.

The case of Williams v. Seaman (3 *Redf.*, 148), so much relied on by counsel, seems to me to have no bearing upon the question under consideration here.

Although the statement of facts in that case is very defective, and leaves it wholly uncertain whether Julia, the residuary legatee, died before the testator or after her, yet the fact that Julia's death preceded her testator's is made apparent from the opinion of the learned Surrogate. On page 150, that statement is made in express terms in connection with the discussion of the case of Burtis v. Doughty. The paragraph quoted from 1 Roper on Legacies, 465, near the beginning of the opinion (p. 149) bears directly upon

the effect of the legatee's death during the lifetime of the testator. The other authorities cited and discussed relate wholly to the effect of the word "heirs" in a bequest, and there is nothing in the case which can throw light upon the question of lapse as it comes up in the present case.

My conclusion is, therefore, that the right to the legacy of Stout, and to the residuary interests of Kelly and Cochrane passed, upon their respective deaths, to their legal representatives, and that, after payment of such legacy to Stout's executors, the residue of the estate should be paid over in equal one fifth parts to Hiram L. Barker, John Lutes, John A. Colwell, and the executors of John W. Kelly and the executors of James C. Cochrane.

A decree in accordance with the foregoing opinion may be entered on five days' notice to the parties who have appeared herein.