GUARANTY TRUST COMPANY OF NEW YORK, Individually and as Substituted Trustee under the Last Will and Testament of JOHN CURRY, Deceased, Plaintiff, *v.* MARY G. CURRY and Others, Defendants.

Supreme Court, New York County, March 26, 1929.

*Davis, Polk, Wardwell, Gardiner & Reed* [*J. B. Warner* of counsel], for the plaintiff.

*J. Clifford McChristee* [*Carroll Blakely Low* of counsel], for Mary G. Curry and others.

*Strauss, Reich & Boyer* [*Lorenz Reich, Jr.,* of counsel], for the defendants Robert Curry and others.

*Charles V. Scanlan,* for the defendant Joanna Ferguson, individually and as executor, etc.

FRANKENTHALER, J. The principal question in this case is whether a certain remainder to one Edmond J. Curry, upon the termination of a testamentary trust, was vested or contingent or, more accurately, whether such remainder, even if contingent, was descendible or devisable upon the death of Edmond J. Curry prior to the expiration of the trust. John Curry died testate in 1898. His residuary estate was left to his executors in trust, the trust being measured by the lives of his son, James F. Curry, and of his niece, Mary Curry. The income of the residuary estate, except for an annuity to Mary Curry, was to be divided equally between his son, James F. Curry, and his grandson, John J. Curry. The following provision covered the disposition of one-half of the principal: " Upon the death of the longest liver of them my said son James F. Curry and my said niece Mary Curry, the said trust shall cease, and the trustees shall forthwith divide the whole of the trust property into two equal parts and convey, transfer and pay over one of said equal parts to my grandson John J. Curry, the son of my deceased daughter Mary A. Curry, if he be then living,

and if he be dead, to his children who may then be living and the issue of any who shall have died leaving issue, the issue of any deceased child taking their parent's share, but if my said grandson shall have died without leaving issue him surviving, it is my will that the said one equal part of said trust property shall be transferred and paid over one-fourth to my nephew Edmond J. Curry, two-fourths to the children of my son James F. Curry, and one-fourth to the children of my nephew James P. Curry, and if any of said children shall have died leaving issue, such issue shall take their parent's share." The other one-half of the principal was left to the issue of the testator's son James F. Curry, with remainders over which are of no importance here. The trust came to an end with the death of James F. Curry in 1927, Mary Curry having predeceased him. The grandson, John J. Curry, had died without issue in 1903, and the nephew, Edmond J. Curry, had died in 1919. The children of James F. Curry and of James P. Curry living at the termination of the trust stand ready to take the remainders designated for them and it is undisputed that these two classes are entitled to six-eighths and one-eighth, respectively, of the principal. The controversy centers upon the one-eighth which would unquestionably have gone to Edmond J. Curry if he had been living at the time of distribution. One set of defendants, tracing their rights from the heirs and next of kin of the testator, insist that the remainder to Edmond was a contingent remainder, that it has already been so marked by a decree of the Surrogate's Court which is now *res adjudicata* and that consequently this one-eighth share belongs to them as intestate property. Another group of defendants, representing the persons entitled to the estate of Edmond J. Curry (who died testate as to a portion of his property and intestate as to another portion), contend that this remainder was a vested remainder and passed to them as part of Edmond's estate. The solution of the problem is somewhat complicated by reason of the decree of the Surrogate's Court previously referred to. As to the construction and effect of the will, I feel entirely clear that the remainder to Edmond, call it vested or contingent, was descendible and devisable and passed as part of his estate. At common law Edmond's interest was an executory devise. Under our statutes it was an expectant estate, a remainder (Real Prop. Law, §§ 35-38), and as such it was " descendible, devisable and alienable." (Real Prop. Law, § 59.) The fact must not be lost sight of that here we have a future estate to a person by name, to take effect on only one express contingency, *i. e.*, the death of John J. Curry without issue prior to the termination of the trust. We are not dealing with the case, so frequently encountered, of a

remainder to a class. Nor are we dealing with a remainder subject to further gifts over. This remainder was the ultimate one. Ever since the decision in *Hennessy* v. *Patterson* (85 N. Y. 91) the rule has been that a remainder of this character is descendible and devisable, and that even though the remainderman dies prior to the time of possession and enjoyment, the remainder passes to his devisees or heirs. In that case the will provided that upon the death of the testator's daughter the estate should go to her children, and in case she should die without issue, then to John Foley. Foley predeceased the daughter, who left no issue. It was held that Foley's heirs were entitled to the estate. The remainder, though strictly a contingent one, vested in Foley as a right and descended to his heirs by virtue of the statute. The Court of Appeals observed that under the contrary argument an additional contingency, that Foley should also be living at the death of the daughter, would have to be implied, though nowhere to be found in the will, and the court rejected this contention. I take it as settled law since *Hennessy* v. *Patterson* (*supra*) that while in some cases the contingency may be such that the remainder is not descendible or devisable, yet so far as the contingency does admit all expectant estates are descendible and devisable. Sometimes the courts follow the *Hennessy* case and call the remainder contingent. (*Roosa* v. *Harrington*, 171 N. Y. 341; *Matter of Smith*, 205 App. Div. 499.) Sometimes they term it a vested remainder. (*Matter of Banker*, 223 App. Div. 496; affd., 248 N. Y. 596.) Whatever the terminology, the effect is the same; the heirs or devisees of the deceased remainderman prevail over the heirs or next of kin of the testator. Even if we ignore the line of authorities headed by the *Hennessy* case and take as the sole test the vested or contingent character of the remainder, it must be evident that the remainder to Edmond became a vested remainder not later than the death of John J. Curry without issue in 1903. Even if the remainder were, theretofore, contingent, the contingency then ceased; the conditions on which the right to a share of the estate depended were then satisfied; only the outstanding trust postponed its actual enjoyment. (*Matter of Ossman* v. *Von Roemer*, 221 N. Y. 381.) Both on principle and authority, therefore, it seems plain that the heirs and devisees of Edmond J. Curry are entitled to this one-eighth share of the principal. The question of *res adjudicata* requires a tracing of the judicial record of this estate through intermediate accountings. The trust here was partially an estate *pur autre vie*, and, as so often happens, in such cases, the death of a beneficiary as to income prior to the expiration of the trust produced difficulties. After the death of John J. Curry without issue in 1903, the portion of the

income theretofore paid to him was undisposed of by the will.
A judgment of the Supreme Court directed the trustees to pay
this portion of the income, one-fourth to Edmond J. Curry, two-
fourths to the children of James F. Curry and one-fourth to the
children of James P. Curry, as the persons presumptively entitled
to the next eventual estate. This judgment was obviously an
application of the rule that income undisposed of during the con-
tinuance of a precedent estate shall belong to the persons pre-
sumptively entitled to the next eventual estate (Real Prop. Law,
§ 63, as amd. by Laws of 1916, chap. 364), and the correctness of
this adjudication cannot be challenged. After the death of Edmond
in 1919 the trustee brought a proceeding in the Surrogate's Court for
a judicial settlement of its accounts. In its petition the trustee stated
that doubt had arisen as to who was entitled to the portion of the
income theretofore paid to Edmond, and the prayer for relief included
a prayer for a direction as to the payment of such income. The answer
of Edmond's executors claimed the accrued income on the ground of a
vested interest therein in their testator. The answer of James F.
Curry, as the testator's sole next of kin, laid claim to this portion of
the income by intestacy. In neither answer was there any specific
and clear-cut reference to the next eventual estate. The decree after
settling the account declared that as to this portion of the income
the testator died intestate and that it should be paid to " the next of
kin of John J. Curry, deceased, to wit, to James F. Curry." It is
upon this decree that the argument of *res adjudicata* is based, the
claim being that while the decree deals only with the undisposed
of trust income, such income follows the same route as the next
eventual estate, and the surrogate must have concluded that the
remainder to Edmond had lapsed upon his death. We have then
a case where on an intermediate accounting the surrogate has made
an award of undisposed of income without any reference to the
ownership of the principal, and the question is whether such an
adjudication is binding upon a final accounting as to the ownership
of the principal. No authority in point has been found, and the
matter is not wholly free from difficulty. It seems to me, however,
that the surrogate's decree is not a binding adjudication upon the
issue here raised. The controversy in that proceeding was merely
as to a portion of the trust income. The pleadings defined the
issue in such fashion, and the surrogate's ruling was confined to
an allocation of the income. *The surrogate did not declare or find
that the next of kin, James F. Curry, was the owner of the next eventual
estate and was, therefore, entitled to the trust income.* To say that
the surrogate awarded the income to the next of kin because he
deemed that the remainder designated for Edmond belonged to

them is a statement resting, to some extent at least, on inference and conjecture. There are cases where section 63 is held inapplicable, and undisposed of income is awarded to persons other than those next in line in the sequence of estates ( *U. S. Trust Co.* v. *Soher,* 178 N. Y. 442; *Matter of Kohler,* 231 id. 353), and for aught that appears the surrogate may have deemed the case before him to have been such a case. It seems to me unjust and unreasonable to hold that the defendants claiming under Edmond must be foreclosed from asserting their ownership to this remainder because of a decree of this sort, when it is considered that the prior proceeding did not directly involve the disposition of the remainder, but had to do with property of a far smaller value, that it does not appear that the issue as to the remainder was fought out, and that the decree itself is silent as to the remainder. Bearing in mind the undoubted rule that any uncertainty as to what was actually litigated in the earlier proceeding inures to the benefit of the party denying that the doctrine of *res adjudicata* is applicable (*Griffen* v. *Keese,* 187 N. Y. 454, 464), I am constrained to hold that the decree of the Surrogate's Court in 1920 is not a bar to a determination of the rights of the parties on the merits. In view of the foregoing it is unnecessary to decide whether that decree would now-be binding if it had described the next of kin as the owners of the next eventual estate, a question upon which I express no opinion. I, therefore, hold that the defendants Joanna Ferguson, Robert Curry, Genevieve C. Siegman, Teresa C. Finney, Ellen C. Hamilton and Mary C. Burke are entitled to the one-eighth share of the principal forming the remainder to Edmond J. Curry The other questions involved in the action call for only brief mention. Unless there is objection by the defendants to the commissions claimed by the plaintiff, the commissions as computed in the plaintiff's brief will be allowed. The tentative assessment against the real estate, if later perfected so as to become a lien thereon, will be a charge against the remaindermen. The plaintiff will be under no duty to pay such lien, and there is no necessity for the plaintiff to retain in its hands any sum to cover the tentative assessment. As to the real estate, no deed from the plaintiff to the remaindermen is necessary, the title having vested in the remaindermen by force of the will upon the termination of the trust. Submit proposed findings of fact and conclusions of law upon notice.