EDGAR WILLIAMS et al., as Executors, etc., Respondents, *v.* LAURA R. FREEMAN et al., Appellants.

The will of F. directed his executors to divide his residuary estate " share and share alike," among certain of his children named, each to "have the use and benefit of one of such equal shares for life," the principal thereof then to go to his or her children, if any, if not, to the next of kin. The executors were empowered to sell the real estate, and in case of sale to keep the proceeds on deposit or invested "until a final settlement" of the estate. In an action for a construction of the will, *held*, that no trust was created thereby, as to the residuary estate, but that each child entitled to an interest therein, took a legal estate for life in an equal share ; that the direction as to the disposition to be made of the proceeds of any sale until "final settlement," had reference to the final settlement of the accounts of the executors, and thereupon each beneficiary became entitled to the possession of his or her share for life, subject to the remainders limited thereon.

The will gave to the executors $4,000, to be held in trust, the income to be paid to a sister of the testator during her life, and upon her death the principal to go into the residuary estate; also $25,000, to be held in trust for the benefit of the testator's wife, " during her natural life or widowhood," and " at her decease or re-marriage," the principal to revert to his estate. *Held*, that the beneficiaries entitled to the residuary estate took vested estates in remainder in said trust funds.

(Argued February 13, 1885 ; decided April 14, 1885.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made the first Monday of May, 1884, which reversed certain portions of a judgment entered upon a decision of the court on trial at Special Term.

This action was brought to obtain a judicial construction of certain provisions of the will of Lorrain Freeman, deceased, and a codicil thereto. It is reported upon a former appeal in 83 N. Y. 561.

The provisions of the will in question are as follows:

" *Second.* I give and devise to my son, Lorrain, my dwelling-house and lot of land on the west side of Cherry, near William street, East Orange, New Jersey. * * * * And it is my will, that on a final division and settlement of my estate, this property so devised to him be taken into account as a part of his share of my estate, and for that purpose be valued at $10,000, but without interest or any charge for the use thereof.

" *Third.* I give and devise to my daughter, Amy H., my dwelling-house and land, with the appurtenances, in the village of Woodridge, N. J. * * * * And it is my will, that on a final division and settlement of my estate, this property so devised to her be taken into account as a part of her share of my estate, and for that purpose be valued at $10,000, but without interest or any charge for the use thereof.

" *Fourth.* I have already advanced to and for my son, Edward, in various ways, moneys equivalent to the above devises to Lorrain and Amy, and it is my will that the same be charged to him on a final settlement and division of my estate, as an advance of $10,000 on account of his share thereof, but without interest.

" *Fifth.* I order and direct my executors to set apart, in good bonds and mortgages of real estate situate in the city of New York, or its vicinity, such as shall be undoubted security, the sum of $25,000, and deposit the same in the Union Trust Company of the city of New York to the credit of my estate, to be held by said company in trust for the benefit of my dear wife, Mary, during her natural life or widowhood, and if any

such mortgage shall be paid off during her life-time or widow-hood, the moneys are to be reinvested by my executors on the like security, and the whole kept invested in the names of my executors, at lawful interest, or as near that as may be, payable half yearly; the whole of the net interest and income of the said fund of $25,000 to be paid over to my said wife half yearly during her natural life or widowhood, for her own use and benefit, and the use and benefit of our daughter, Laura. At her decease or remarriage, the said principal sum to revert to my estate, unless our said daughter, Laura, shall then be living, and in that case the said fund to remain thus invested, and the income applied to her use and benefit so long as she may live, and at her decease the principal to go to her issue, if any she should have, in equal shares, if more than one, and if she leave none, then to my next of kin according to law.

" *Tenth.* I give to my executors the sum of $4,000 in trust, to invest the same on bond and mortgage of real estate in the city of New York or its vicinity, and keep the same so invested during the life of my sister, Julianna, and apply the net interest and income thereof to her use, half yearly or quarterly, as long as she may live, and at her decease the principal to revert to and form a part of my residuary estate.

" *Eleventh.* All the rest, residue and remainder of my estate, real and personal, after paying and providing for the bequests and devises above mentioned and the trust funds hereinbefore directed to be set apart and invested, when the parties for whose benefit they are thus set apart shall depart this life, I direct my executors to divide, share and share alike, among my daughters, Sarah E., Deborah B., Adelaide and Amy H., and my sons, Edward M. and Lorrain C., of my children now living, and any children that may be born to me after the date of this, my will; and in case any child of mine, for whom one of such shares is designed, should at the time of my decease be dead leaving issue surviving, such share is to be set apart for the benefit of such issue; and my will is that each of my children above named who shall survive me, shall have the use and benefit of one of such equal shares for life, and at his or

her decease the principal thereof shall go to and be divided equally among his or her issue, if any, and if none, then among his or her next of kin, according to law; and farther, it is my will that the issue of any one of my above-named children, who, at my decease, shall be dead, leaving such issue, shall receive the share which the parent would have had the use of if living, the same to be divided equally among them if more than one.

" *Twelfth.* I authorize and empower my executors hereinafter named, or such of them as shall qualify, and the survivors and survivor of them, at any time or times when in their judgment it may become necessity or advisable, to sell the whole or any part of my real estate, at public or private sale, on such terms and at such prices as may seem to them most advantageous, and to make, execute and deliver to the purchaser or purchasers thereof good and sufficient deeds of conveyance for the same.

" And I direct them to keep the proceeds of sale and all other moneys of my estate, not wanted for immediate use, deposited in the Union Trust Company of the city of New York, in the joint names of my acting executors, until proper investments of the same can be made, and that they invest the same as fast as practicable, in bonds and mortgages of real estate in the city of New York or its vicinity, or in good bonds or stocks of the United States or the State of New York, with full power to call in and reinvest on similar securities the moneys so invested, as may from time to time become necessary or desirable, until a final settlement of my estate."

The codicil contained the following provisions:

" Whereas, in the third clause of my will, hereto annexed, I have devised to my daughter, Amy, a house and land in Woodbridge, and directed that at the division of my estate the same be valued at $10,000; now I hereby order and direct that on such division the same be valued at $8,000, and when the payments mentioned in the ninth clause of my said will shall be made to my children who are named in that clause, I direct

that $2,000 be paid to the said Amy, to make her equal to the others.

" *Third.* Whereas in the fifth clause of my said will, I have directed that the income on the fund in that clause mentioned be paid over to my wife for her own use and benefit, and the use and benefit of our daughter, Laura, I hereby order and direct that she receive the same for the use and benefit of herself alone.  *  *  *  *  And at her decease or remarriage, it is my will that the principal sum revert to my estate, without any reference whatever to my daughter, Laura.

" *Fourth.* On a final division of my residuary estate, as directed by the eleventh clause of my said will, I hereby order and direct that my two daughters, Laura and Ida M., and any other children born to me after the date hereof, be included and share in such division, equally with my other children in said clause named."

The testator left him surviving his widow, five children of his first marriage named in the residuary clause of the will, all of age, and two infant children by his second marriage, Laura, named in the will, and Ida M., born after its execution.

*Theodore F. Miller*, guardian *ad litem*, for infant appellants.   A life tenant may take into his custody the fund or share, to the use of which he is entitled for life, upon giving security for its preservation for the remaindermen.  (*Tyson* v. *Blake*, 22 N. Y. 558; *Smith* v. *Van Nostrand*, 64 id. 278; *Murray* v. *Livingston*, 68 id. 485; *De Rivas* v. *De Herques*, 24 Hun, 341; 12 Weekly Dig. 87; *Montfort* v. *Montfort*, 11 id. 543.)   These infant appellants are life tenants under the eleventh clause of the will, as modified by the fourth clause of the codicil, which, in effect, inserts their names in the eleventh clause.   (85 N. Y. 570, 571.)  To create an express trust, it must appear from the instrument that it was the testator's intent and purpose, gathered from the language used, to create, in substance, what is defined by the statute to be such a trust.  (*Vernon* v. *Vernon*, 53 N. Y. 359; *Morse* v. *Morse*, 85 id. 55; *De Peyster* v. *Clendenning*, 8 Paige, 295.)

As to personalty, even if power were given to collect income, a trust is not created where the principal is directly given to a legatee. (*Onondaga T. & D. Co.* v. *Price*, 87 N. Y. 542.) Even a general devise to executors in trust vests no estate in them, except for such of the declared purposes as require that the title be vested in them. (*Manice* v. *Manice*, 43 N. Y. 303; *Drake* v. *Price*, 5 id. 430; *Lansing* v. *Lansing*, 45 Barb. 185; *Verdin* v. *Slocum*, 71 N. Y. 345.) The $10,000, legacies and devises in fee to the adult children, are not, under the language of the will and the former decision of this court, to be charged against them and their residuary interests until the time of final settlement and division of the estate. (83 N. Y. 565.) The court will not relieve from the consequences of an executed agreement, in absence of fraud. (*Hunt* v. *Rousmanier*, 1 Pet. 1; *Clark* v. *Thatcher*, 9 Cow. 681; *People* v. *Stevens*, 71 N. Y. 559.) If fairly made, family compromises, like others, are, upon principles of public policy, valid, and mistakes of law will not avail in equity to invalidate them. (Willard's Eq. [Potter's ed.] 69.) The executors, if their stipulation had been made and executed before suit brought, could not have rescinded it at their own suit — not even if their act had been one of *devastavit*. (Souler on Executors, § 360; *Stronach* v. *Stronach*, 20 Wis. 129; *Herren* v. *Marshall*, 5 Humph. 443.)

*Samuel Hand* for adult appellants. If the executors have a trust estate that lasts " until final settlement " it is void, as not being dependent upon the lives of all. (*Garvey* v. *McDevitt*, 72 N. Y. 556; *Smith* v. *Edwards*, 23 Hun, 223; 88 N. Y. 92.) The power given to the executors to divide would not prevent the vesting of an estate for life in the children with remainder in their issue, or if none, their heirs generally. (*Manice* v. *Manice*, 43 N. Y. 303.) To hold that a trust estate has been devised by implication, there must be so strong a probability of such an intention that the contrary cannot be supposed. (*Post* v. *Hover*, 33 N. Y. 593, 599, 601; *Rathbone* v. *Dyckman*, 3 Paige, 9; Jarman on Wills, 465.) The powers

committed here to the executors are not only entirely consistent with the vesting of the life estates in the children, but are not of a character which have in any case in this State been held sufficient to imply a trust. (*Crittenden* v. *Fairchild*, 41 N. Y. 289; *Prentice* v. *Jansen*, 79 id. 478; *Jansen* v. *Wemple*, 3 Redf. 229; *Vernon* v. *Vernon*, 53 N. Y. 358.)

*F. H. Kellogg* for respondents. The will does not nor do the proceedings herein authorize the life tenants to take the residuary estate into their possession on giving security. (*Tyson* v. *Blake*, 22 N. Y. 558; *Smith* v. *Van Ostrand*, 64 id. 278; *Livingston* v. *Murray*, 68 id. 485.) No particular form of words is necessary to create a trust, the intent is what the court looks to. (2 Fonb. 36; 3 Ves. 9.)

RAPALLO, J. When this case was before us on a former occasion (see 83 N. Y. 561), the only point presented for our consideration was whether the adult children of the testator were entitled to a preference over his two infant children by his second marriage, in the amounts of their shares on the final distribution of his estate. The question whether the children took life estates in their respective shares, or whether they were entitled only to equitable interests therein as beneficiaries under a trust, did not arise and was not a subject of discussion. From this circumstance an inaccuracy in some general expressions crept into the opinion, which would not have occurred had the point been before us. Any misapprehension which may have been occasioned by this inaccuracy should, however, have been corrected by the concluding portion of the opinion, which affirmed so much of the judgment of the Supreme Court as adjudged that the children took life estates in their respective shares on the final distribution.

The point is distinctly presented by the appeals now before us, and we are of the opinion that each child of the testator, entitled to share in his residuary estate, took a legal estate for life in an equal share thereof, the shares to be equalized in the manner pointed out in our previous opinion.

The direction in the eleventh clause of the will is that the residuary estate shall be divided share and share alike among the children named and designated, and that each child shall have the use and benefit of one of said shares for life, and at his or her decease the principal thereof is to go to his or her issue, provision being made for the decease of any of said children before the testator. The children are entitled under this disposition not merely to the benefit, but to the use of their respective shares, and no trust estate is interposed between them and their actual enjoyment of their shares. A trust is sought to be spelled out from the twelfth clause which confers upon the executors a power of sale over the real estate, and directs them to keep the proceeds of such sales and all other moneys of his estate not wanted for immediate use, deposited or invested as therein directed until a final settlement of his estate. No direction is given as to any disposition of the income of these funds, nor are any apt words used to create any trust in respect thereof other than such as resulted from the relation of the executors thereto by virtue of their office. It was a mere direction as to the temporary custody of the funds until the final settlement should take place. By this was intended the final settlement of the accounts of the executors, when the debts and expenses of administration should be paid and the shares of the residuary legatees, respectively, should be ascertained in the manner directed by the will. Upon this being done the time for final settlement arrived, and each legatee became entitled to enter into the possession of his or her share, for life, subject to the remainders limited thereon. And each one had a vested estate in remainder in the two trust funds of $25,000 and $4,000 mentioned in the will.

Our conclusion is that the order of the General Term should be reversed, and the judgment of the Special Term should be affirmed, with costs, payable out of the funds in the hands of the executors.

All concur.

Order reversed and judgment affirmed.