The following is the opinion of the referee:
R. E. Deyo, Referee:
John Gr. Collins died in 1858. His estate consisted of personal property, a piece of real estate, Ho. 41 *24 Wooster street, and another piece in Eighty-fourth street (York-ville). His will was admitted to probate September 20, 1858. It provided that during her widowhood his wife should have the1 net income of his property in Wooster street for the support of herself and their children. He also gave her certain personal property absolutely, and “ the interest and income, use and benefit, of all the residue of my estate during her widowhood.” If she remarried, she was restricted to the use “ during her life ” of the house and lot in Eighty-fourth street, sometimes called the “ house in Yorkville,” and an annuity of $50. In the event of her remarriage, the income of his estate, except the annuity and Eighty-fourth street (Yorkville) house, was to be divided between his children until his son George W., who was his youngest child, arrived at age. At that time, if his widow had remarried, all his estate, except the Eighty-fourth street house and the amount set apart to raise her annuity of $50, was to-be divided between his children. At the death of his widow, the Eighty-fourth street (Yorkville) house was to be sold by the executors, and the proceeds thereof “and of all my other estate” divided “between my descendants.” The testator left him surviving his widow and three children, William, John W., and George W. Collins; the two latter then being infants. In 1860 the widow married Daniel Saunders. In 1861 William Collins and John Findley, the only executors who qualified, rendered an account in this court. The usual proceedings were had, and a decree was entered June 1, 1861, showing a balance in their hands of $523.36, which they were directed to-distribute. The rents of the Woostcr street property were received by William Collins, as executor, from the time of his mother’s remarriage, in 1860, until the property was sold to him, as hereinafter stated. George W. Collins, the youngest son, became of age in August, 1866. In May, 1867, William Collins purchased, from his two brothers their interest in the Wooster street property, and'thus became its sole owner. In April, 1874, the Eighty-fourth street (Yorkville) property was sold to Abbie M. W. Peffers. Two conveyances were made, one by William Collins-as executor; the other by Mary Saunders, the widow, William and John W. Collins and their wives, and George Collins. The total consideration was $8,500, made up as follows: $4,000 secured by a mortgage on the Eighty-fourth street property ; $4,000 by a mortgage on property in Eighty-third street; Harlem Bank stock, par-value $200; and cash, $300. The mortgage-on the Eighty-fourth street property has been paid. The mortgage on the Eighty-third street property was foreclosed, and the property bought in by William Collins, he taking the title as executor. From the time of her remarriage until her death Mrs. Saunders was not called upon to bear any portion of the expenses of the Eighty-fourth street house, such as taxes, repairs, etc., and after the Eighty-fourth street house was sold, and the mortgage on the Eighty-third street house taken in part payment thereof had been foreclosed and bought in, she received the gross rents-pf that house to the time of her dpath, all the expenses being. *25 paid by William. Collins, and charged nominally against the estate. John W. Collins died January 7, 1877, leaving a widow: also one child, named Emma L. Collins. Mrs. Saunders died in October, 1886. William Collins collected the rents on the Eighty-third street house from the widow’s death down to May 4, 1888, when the property was sold for $15,750. Part of the purchase money was secured by a mortgage on the property, but on the 4tli day of January, 1889, the whole amount had been paid up. Emma L. Collins is the general guardian of Emma L. Collins, who is an infant over the age of fourteen years, the said infant being the only surviving child of John W. Collins.
On January 13, 1890, the said guardian filed her petition setting forth, among other things, that William Collins was the sole surviving executor of John 0. Collins; that by reason of the death of John W. Collins, her father, said infant was entitled to a distributive share in the undistributed proceeds of the estate; that various payments had been made to the general guardian on account of such distributive share, and that the petitioner believed that other funds had not been accounted for or distributed. The prayer was that the executor be required to account. On January 13, 1890, the said executor filed a petition that all parties in interest be cited to attend upon such accounting, and thereafter, and on March 3, 1890, an account was filed. Objections having been filed on behalf of the said Emma L. Collins, an order was entered referring the matter to J. H. Stewart, Esq. Subsequently, and -on May 7, 1890, an amended account was filed. To this also the said Emma L. Collins, by her guardian, filed objections. After a large mass of testimony had been taken before Mr. Stewart, he resigned, and I was appointed his successor by an order entered July 22, 1890, which order contained a provision that the testimony taken before Mr. Stewart was to be considered as though it had been taken before me, and that I should proceed with the taking of the testimony.
I think some of the rulings of my predecessor are different, from those I would have made under the same circumstances; but, had they been made as I think they should have been, I do not think it would affect the results at which I have arrived. As appears by the decree on the accounting in 1861, the estate consisted of $523.36 in money, and there were, besides, the premises in Wooster street, and the house and lot in. Eighty-fourth street (Yorkville). To the income of all of this the widow was entitled if she remained unmarried, but as, at the time of the accounting iq 1861, she had already remarried, she was only entitled thereafter to the annuity of fifty dollars and the use of the Eighty-fourth street (Yorkville) house during life ; and because of such remarriage, the remainder of the estate, viz., the $523.36 of money and the Wooster street property, became the absolute property of the testator’s three sons, both being subject to the payment of the annuity of fifty dollars. It is evident-that the $523.36 alone was not sufficient to raise the annuity of fifty dollars; consequently that annuity could not be paid with- *26 out a resort, for a part at least, to the Wooster street property. These difficulties were surmounted when John W. and George W. sold their shares in the Wooster street property to William, which was May 8, 1867, in the following manner: They made an agreement in writing that a fund of $1,000 should be set apart to raise the annuity, to which fund each should contribute one-third; that this fund should be left in the hands of William, and that the shares of John W. and George W. should be contributed out of their shares of the purchase money due from William on the Wooster street property. It does not appear that Mrs. Saunders -objected to this arrangement.
It is claimed on behalf of Emma L. Collins that this fund, or at least so much of it as was contributed thereto by John W. and George W., together with any interest realized thereon in excess of fifty dollars, the amount of the annuity, shall be accounted for as assets of this estate. It is attempted to support this claim on the theory that the annuity was a charge upon the Wooster street property, and, as such, enforceable by the executors; that the fund •of $1,000 was substituted in place of the Wooster street property, and that thereby the same became an asset of this estate by operation of law. Conceding that the annuity was a charge, in whole or in part, upon the Wooster street property, still the direction to the executors to make the necessary provisions for its payment ■did not impress upon the charge any characteristic of a trust. The annuity was simply a legacy, and, as such, it was alienable or releasable by the annuitant Lang v. Ropke, 5 Sandf., 363, 370; Hawley v. James, 16 Wend., 60; Griffen v. Ford, 1 Bosw., 123, 143, 144; Maurice v. Graham, 8 Paige, 483, 487; Hunter v. Hunter, 17 Barb., 25, 90; Mason v. Jones, 2 id., 229, 247. Having the power to release the property absolutely from the charge, and also to release the estate from any claim for the annuity itself, a fortiori, she had the right to consent to or acquiesce in an arrangement by which the annuity was raised from a sum of money contributed as a fund by her sons or anybody else; and it is immaterial whether it was contributed out of the proceeds of the sale •of the property subject to the charge, or from some other source. If the sons had continued to hold the property jointly until their mother’s death, they would then have it free "from the charge, or liability to account, and in the same way they and their representatives now have the substituted fund. If William has not. accounted and settled properly for it, those aggrieved have a remedy, but not in this court.
The said agreement also provided that from the purchase money there was to be reserved $333.33 from the amount due from William to each of his brothers, to cover the expense of paving Eighty-fourth street, and other disbursements, subject to approval. It is claimed that so much of the share of this fund as was contributed by John W. Collins, deceased, is to be accounted for in this proceeding. I overrule this claim, on the ground that the agreement shows that the $333.33 belonged to John W. Collins individually, and that the disposition of it did not concern the estate of John G. Collins.
*27 The remaining, and most important, question relates to the Eighty-fourth street (Yorkville) property. As before stated, this was sold and conveyed prior to the death of the widow, she and the three sons and the executor joining in the conveyance; but subsequent thereto, and before the death of the widow, John W. Collins died, leaving a daughter, and it is to be determined whether the conveyance by John W., her father, prevented the vesting in her of the interest he had in the Yorkville house, if he had not conveyed it, and had survived his mother. The clause of the will covering the subject is as follows : “ Eighth. At the death of my wife, the house and lot in Yorkville to be sold by my executors, and the proceeds thereof, and of all my other estate, to be divided between my descendants according to law.” The first inquiry to be made is, whom did the testator mean by the term 41 my descendants?” “ Descendants,” in its légalas well as its ordinary sense, includes the issue of the body of the testator of every degree, no matter how remote. Van Beuren v. Dash, 30 N. Y., 393, 419; Hamlin v. Osgood, 1 Redf, 409. Consequently, as the members constituting the class my descendants ” must, in the course of nature, vary according to the point of time at which the determination is to be made, it becomes necessary to decide what was the period at which the testator intended that those who then answered to the designation of descendants would be entitled to receive the gift. This must be one of two periods, viz., the death of the testator, or the death of the life tenant. If the death of the testator is the period, then his three sons were the only persons answering to the description at that time. If the death of the life tenant is the period, then John W. Collins, as he did not survive his mother, took nothing, or, what is equivalent, that which he took was subject to be divested by his death before his mother; and his daughter, Emma L. Collins, who was at the time of the death of the widow a living descendant of John G. Collins, was entitled to take as such.
The will affords but little light as to which of these two periods the testator had in mind. It says that if the widow remarried the income of all the property, except the Yorkville house, and an annuity of fifty dollars a year, was to go to his children until his son George W. arrived at age, and then all his property, with the exceptions aforesaid, was to be 41 divided between my children, share and share alike.” (Sixth clause.) By the clause succeeding, if the widow remained unmarried after his youngest child attained lawful age, his whole estate was to remain unsold during her widowhood, 44 unless she and my children shall think it best to sell the same, in which case they are authorized, with her concurrence, to sell the same, and to give the purchaser or purchasers good and sufficient deeds for the samethe proceeds to be invested in the name of the executors, and the income applied to the use of the widow during her widowhood. (Seventh clause.) All these provisions show that, so far as they applied, the testator had in mind benefits to his children only, and the very property given by the eighth clause to his 44 descendants ” it was provided by the seventh clause might be converted from real es *28 tate into personalty by his children, with the widow’s concurrence, if she was unmarried. Giving this control over his property to his children during the widowhood might indicate that the testator used the word “ descendants,” in the eighth clause, as synonymous with the word “ children,” because, if he had not so intended, he probably would not have given his children the power of changing the character of the property in which others, ordinarily included in the word “ descendants,” might be interested.
Assuming that there is nothing in these or any other expressions in the will to indicate when those constituting his descendants, for the purposes of taking under the eighth clause, are to be ascertained, it is well to look at the consequences which might follow, and which the testator must have had in mind as likely to follow, provided he intended his gift for those constituting his descendants at the death of the life tenant. The testator died in 1858, leaving three sons, the youngest of whom became of age in 1866. The age of the widow does not appear, but it could not have been gre#t. She was young enough to lead the testator to suppose she would probably remarry, as appears from the numerous allusions to that emergency in the will. She did remarry in about two years after the testator’s death, and survived him until 1886, about twenty-eight years. In the course of nature it was probable that her three sons by the testator would not only survive her, but that before her death they would marry, and have children of their own. If, therefore, these three sons and their children had survived their mother, then, if those constituting his descendants were to be ascertained at the death of the life tenant, the three sons would have to divide the estate with their children, for the children of the sons of the testator would be descendants of the testator as well as the sons. Hot only this. Inasmuch as there would be an equitable conversion of the realty into personalty by the execution of the power of sale, the taking would be per capita. 2 Williams Ex’rs, 6th Am. Ed., 1114, bottom paging, and cases cited in note c. If John W. Collins, the father of Emma L. Collins, the infant in these proceedings, had survived his mother, he would, under the construction contended for by the infant, have to divide wuth his daughter ; and if the three sons of the testator bad a different number of children, the estate would be divided in unequal degrees. It seems impossible that any such results could have been contemplated by the testator. This conclusion harmonizes with the rule of construction that “ a devise to a class of persons takes effect in favor of those who constitute the class at the death of the testator, unless a contrary intent can be inferred from some particular language of the will, or from such extrinsic facts as may be entitled to consideration in construing its provisions.” Campbell v. Rawdon, 18 N. Y., 412, 415. I hold that by “my descendants ” the testator meant his descendants living at his death, and that his three sons, who were the only persons who constituted the class of his descendants at that time, took all that was given, after the life estate; that the term “ my descendants ” was used as an equivalent of the words “ my children,” used in the sixth. *29 clause to indicate where his property, except that set aside for his widow in case of remarriage, should go ; and that the scheme of the will was that, if his widow remained unmarried, she should enjoy the whole income of his estate during life, with remainder to his three children, and, if she should remarry,, then his children should at once take a portion, and the remainder at her death. Had she died without remarrying, there would be nothing to indicate that the testator meant one portion of his property should then go to his children living at his death, and another portion to all the issue of his body living at her death, except the fact that in one case he speaks of his “ children ” and in the other of his “ descendants; ” and this, as has been attempted to be shown, was not enough. Further, the will does not show that, in case of the widow’s remarriage, the testator’s disposition of the remainder in the Yorkville house was to be any different than if she had not remarried. If “ my descendants,” in the eighth clause, is to be read as though it were “ my children,” the authorities are uniform that at the testator’s death his three sons took a vested remainder in fee in the Yorkville house, subject to the life estate of their mother, and subject also to the execution of the power of sale.
In Post v. Horning, 6 St. Rep., 716 (Sup.Ct., Gen. Term, Second Dept.), the devise of the estate to the testator’s wife for life, or until her remarriage, if she should remarry, and upon her death or remarriage the devise of the rest, residue and remainder to the testator’s children, created a vested remainder in fee in the children. The fee was absolute at the time of taking; possession only was postponed. In Williams v. Freeman, 98 N. Y., 577, the will .gave to the executors $4,000, to be held in trust, the income to be paid to a sister of the testator during her life,and upon her death the principal to go into the residuary estate; also $25,000, to be held in trust for the benefit of the testator’s wife “ during her natural life or widowhood,” and “at her decease or remarriage” the principal to revert to his estate. Held, that the beneficiaries entitled to the residuary estate took vested estates in remainder in said trust funds. In Re Hedger's Estate, 6 N. Y. Supp., 769, 25 St. Rep., 603, affirmed by 9 N. Y. Supp., 347; 30 St. Rep., 459, the testator, after giving the use of his personalty and realty to his wife for life, gave two pecuniary legacies, and devised all his real and personal estate, except the legacies, to certain of his children and grandchildren, naming them, to be divided equally between them, share and share alike. “ Such devises and bequests are to take effect, and such division of my estate is to be had, after the decease of my wife.” He also authorized his executors, after the death of his wife, to sell his real estate, and divide the proceeds as above directed. Held, that the interests of all the legatees and devisees vested at the death of the testator, subject to the life estate in the widow, and the power of sale in the executors, and none of them lapsed by the death of the legatees or devisees during the life of the widow. See, also, Livingston v. Greene, 52 N. Y., 118; In re Mahan, 98 N. Y., 372; Warner v. Durant, 76 N. Y., 133, 136. Some of *30 these cases refer to disposition of personal property, but by 1 R. S., 773, § 2, limitations of future or contingent interests in personal property are subject to the rules in relation to future estates in lands. Gases seemingly contrary to the position I have reached will, I think, be found to turn upon the fact that the title of the property was vested in trustees during the intermediate estate, or that there was a specific devise over to issue if the taker of the first estate did not survive the life tenant. Teed v. Morton, 60 N. Y., 502 ; Delafield v. Shipman, 103 N. Y., 463; 4 St. Rep., 247. It is contended on behalf of Emma L. Collins that the clause should be read as though the gift had been to the testator’s children, with a proviso that, if any of the said children should die before the widow, leaving issue, such issue, if living, should at the widow’s death take the share which the parent of such issue would have taken if living. If this were so, the share of John W. Collins would still yest in him, subject to be divested by his death before his mother. But a devise over to his issue or to others is not a matter to be presumed, because it is in derogation of the rights of the heir, and must be effected by express words." See, also, Livingston v. Greene, supra, and Byrnes v. Stilwell, 103 N. Y., 453 ; 4 St. Rep. 241.
The next question is whether the three sons, being seized of the fee of the Yorkville house, subject to the life estate of the mother and subject to the execution of the power of sale, could effectually convey the premises with the consent of the mother and of the surviving executor.
First. As to the life estate. Mrs. Saunders had the use of the house until her death. This was a mere life estate. It did not possess any characteristic of a trust. It was hers absolutely, and she was at liberty to do as she pleased with it. 1 Washb. Real Prop., marg. p. 91, § 13. Under certain circumstances a trust might have arisen. While she remained unmarried any part of the real estate could be sold with the concurrence of the widow and children, and the proceeds would constitute a trust fund, the income of which was to go to her during life. (Seventh clause.) The property was not sold during her widowhood, and therefore, on her remarriage, the provision of the will above referred to became inoperative.
As to the power of sale. If the conclusion is right that the three sons took a vested remainder in the fee, subject to the execution of the power, then they took the same interest in the ■proceeds as if the power had been executed at the termination of the life estate. The assent of the donees of the power to the sale in the widow’s lifetime was shown in that the surviving executor joined in the conveyance. This brings this case fully within the principles laid down in Kilpatrick v. Barron, 125 N. Y., 751; 36 St. Rep., 15, where Judge Andrews, writing the opinion, says: “ The case is clearly within the rule that, where by the will the exercise of a power of sale given to executors is postponed for the benefit of legatees or devisees during the intermediate period, the execution of the power may be accelerated by the consent'of the executors and all the persons interested, *31 provided the persons interested and who join in the conveyance are sui juris, and the conveyance is not in contravention of any trust, and is consistent with the substantial purpose of the testator in creating the power. Perry Trusts, § 783, and cases cited Garvey v. McDevitt, 72 N. Y., 563; Hetzel v. Barber, 69 N. Y., 1.” It follows that by virtue of the instruments delivered the fee of the Yorkville property vested in Abbie M. W. Peffers, the grantee, freed from the power.
I.t is claimed on behalf of Emma L. Collins that, the full consideration, viz. $8,500, being recited only in the conveyance by the executor, the consideration in the deed by the sons and the life tenant being nominal, this sum of $8,500 became a part of the estate of John G\ Collins, and was held by the executor as such. I cannot assent to this. The property, by virtue of the will itself, was at the absolute disposal of the three sons and their mother in any manner upon which they might agree, and the proceeds of sale were their absolute property. Under the rule laid down in Kilpatrick v. Barron, supra, the conveyance by the executor did not show that he was interested in the proceeds, but that he assented to the nullifying of the power to sell after the widow’s, death. It is a matter of grave doubt whether the conveyance would not be effectual without the assent of the executor, or even against his will; for when the purpose for which the power was created becomes wholly unattainable the power ceases, and this is so although the purpose is defeated by the voluntary act of the person for whose benefit the power was created. Hetzel v. Barber, 69 N. Y., 1. If, therefore, by the assent of all the parties to the conveyances, the proceeds of the sale were kept in the name of the executor as such, this was done by virtue of an agreement between the grantors that he should do so, and not by virtue of any authority derived from the will. Consequently, as the only trustees over whom this court has jurisdiction are testamentary trustees, any accounting as to the disposition of those proceeds cannot be had here on the theory that he holds those proceeds as executor. The use of that title of his own motion or by agreement, with others cannot constitute him an executor, and any person who feels aggrieved by the disposition of those proceeds must pursue William Collins individually in the courts having jurisdiction of such actions. It makes no difference that, instead of money, a mortgage on other premises was taken in part payment, which ran to the surviving executor, or that such mortgage was foreclosed, and the title to the premises was taken in the name of such executor, and subsequently conveyed by the same description. If the proceeds of the sale had once lost the character of assets of the estate of John Gf. Collins, that character could not be restored by using the title of executor in transactions concerning such proceeds. As the executors accounted in 1861, and the balance in their hands was properly distributed, and as no other funds belonging to the estate have come into their hands since, the petition of Emma L. Collins as guardian of her daughter Emma L. Collins should be denied, and all subsequent proceedings had upon the theory that William Collins can be required to- *32 make an accounting as surviving executor of John G. Collins ■should be set aside. Nor can William Collins be allowed to voluntarily account here for his acts in relation to property not belonging to the estate, by assuming to make such an accounting as an executor. Consent does not confer jurisdiction as to a subject-matter.
J. S. Van Wyck, for app’lt; R. H. McGrath, Jr., and Daniel G. Rollins, for resp't.