(28 Misc. Rep. 671.)

HAUG v. SCHUMACHER et al.

(Supreme Court, Special Term, New York County.  August, 1899.)

1. WILLS—CONSTRUCTION—REJECTION OF INVALID PROVISIONS.
    Provisions of a will which would render it invalid will be rejected,
    and effect given to its valid provisions, where by so doing the general
    purpose of the testator can be carried out.

2. SAME.
    A will provided that the real estate of the testator should not be sold
    until the death of his widow and both of his two sons; that the widow,
    so long as she lived and remained unmarried, should receive one-third the
    income from the real estate, and the remaining two-thirds should be
    equally divided between the two sons, share and share alike, and on the
    death of both sons the estate should be equally divided among the testa-
    tor's grandchildren, per capita.  No disposition was made of the share of
    the income to be enjoyed by the son who should first die, after his death
    and while his brother survived.  Held, that the provision in restriction of
    alienation must be rejected as void; that the evident purpose of the tes-
    tator was to provide for the support of his widow and sons during their
    lives, and afterwards to divide the estate equally among his surviving
    grandchildren; and that the will would be so construed as to sustain its
    general validity, and to effectuate that purpose by requiring, on the death
    of either son, the distribution among the grandchildren then living of the
    portion of the estate from which he had enjoyed the income.

Action by Christian C. Haug, individually and as executor, against
Henry J. Schumacher, individually and as executor, and others, for
the construction of a will.

Ullo, Ruebsamen & Higginbotham (E. G. Higginbotham, of coun-
sel), for plaintiff.

Reeves, Todd & Swain (Alfred G. Reeves, of counsel), for Schu-
macher and others.

W. H. Steinkamp, guardian ad litem (Abel Cook and A. O. Salter, of
counsel), for infant Hildenbrand.

R. G. Babbage, guardian ad litem, for other infants.

RUSSELL, J.    John C. Haug, of the city of New York, died the
26th day of December, 1897, owning personalty of the value of

$77,000, and realty of the value of $114,000. He left a widow, Walburga Haug; a son, Christian C. Haug, the plaintiff, who is married, but childless; another son, Frederick L. Haug, married, with four children, aged from 2 years to 11; and a grandson, the only child of his deceased daughter, Louisa Hildenbrand, which grandson is now of the age of 13 years. The clauses of his will which require construction by this court are as follows:

"Sixth. It is my will and pleasure, and I hereby direct, that none of my real estate shall be sold until after the death of my said wife and my two sons. Seventh. I give and bequeath the equal one-third part of all the income, rents, issues, and profits of all the rest, residue, and remainder of my lands and real estate, of what nature and kind soever, and whatever the same may be, at the time of my death, to my wife, Walburga Haug, for and during the term of her natural life, or so long as she shall remain my widow and not marry again, in lieu of dower. The remaining equal two thirds of the income, rents, issues, and profits of my said lands and real estate I give and bequeath to my two sons, Frederick Ludwig Haug and Christian Charles Haug, to be divided among them equally, share and share alike. Eighth. Immediately upon the death of my said wife or her remarriage,—whichever event shall first happen,—I give and bequeath all the income, rents, issues, and profits of my said lands and real estate to my two sons, Frederick Ludwig Haug and Christian Charles Haug, to be divided among them equally, share and share alike. Ninth. Immediately after the death of my said wife and the death of my said two sons, Frederick Ludwig Haug and Christian Charles Haug, I give, devise, and bequeath all of my said estate, real and personal, to all of my grandchildren, to be divided among them equally, share and share alike, per capita, not per stirpes. Tenth. I hereby authorize and empower my executors to rebuild any of the buildings now standing upon any of my lands and which may become destroyed or dilapidated by fire or otherwise, and to use and employ any moneys or funds that may be in their hands belonging to my estate for the purpose of such rebuilding."

In case of intestacy, the laws of the state of New York endeavor to make a fair disposition of the property of the deceased, with due regard to the claims of next of kin and heirs. But there is accorded to the testator, as an inherent right, where he has accumulated or preserved property, the power to dispose of the same by will, and let his parting directions govern its ultimate disposition, although he has forever ceased to need its use. This is not only as an incentive to the judicious conservation of property through life, but because he, better than all others, knows the condition in which he leaves it, the needs of those who are dependent upon him, the safeguards required to accomplish benefit, combined with protection, and all of the other details of fact and circumstance involved in correct judgment. The courts will go far to accomplish the beneficial results, if they can safely ascertain the testator's wishes. They will not allow rules designed by public policy to be transgressed, but, if they can effectuate the main object of the testator's directions, they will blot out those lingual expressions which bring invalidity, and which only serve to frustrate the testator's design. Even a limitation may be implied to effectuate the general scheme. Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933. The separation of the void finishing of a trust from the valid part of the trust may be made. Duncklee v. Butler, 38 App. Div. 103, 56 N. Y. Supp. 491. A division may be had of the portion into separate funds, to save it from the objection of invalidity. Allen

v. Allen, 149 N. Y. 280, 43 N. E. 626.    Even though there be an im-
plied provision as to accumulations which renders the trust as a
whole ineffective, the primary intent may be regarded, and the valid
trust separated from the void.    Cochrane v. Schell, 140 N. Y. 516, 35
N. E. 971.    Though the scheme be to preserve the fund as a unity for
investment, a severance of it into shares by a conclusion of law may
be made, to prevent undue suspension.    Schermerhorn v. Cotting,
131 N. Y. 48, 29 N. E. 980.    Though the restriction of the vesting of
title to such children as shall be living at a future time may render
the vesting of that title at such time impossible, as offending the
policy of the law, yet such restriction may be lopped off to prevent the
necessary conclusion.    Henderson v. Henderson, 113 N. Y. 1, 20 N. E.
814.    In the present case no express trust is created by the will, giv-
ing title to the executors, of the realty or the personalty, and none
will be implied where such implication makes the disposition of the
property void.    Greene v. Greene, 125 N. Y. 506, 26 N. E. 739.

So far as I can penetrate the wishes of the testator in this imper-
fectly drafted will, he desired to provide a satisfactory income for his
wife and two sons during their respective lives, and to give there-
after to his grandchildren the estate, per capita, and not per stirpes,
so that each living descendant of the second degree should partici-
pate in the bounty of the grandfather.    His eye was mainly upon the
realty, which was the largest part of his property, and he knew that
his personalty would be diminished by the payment of the specific
legacies and his obligations, including probably the mortgage on one
of the pieces of realty.    His widow and his two sons needed the bene-
fits of his property, undiminished by power of deduction through their
alienation of any part during their lives.    Each dying, he or she
needed that benefit no longer, and it was among the survivors he had
to look for the distribution of the benefits of the residue.    By the
seventh clause of his will, he indicates the use of the income during
the three lives, giving to the widow, until a possible remarriage, in
lieu of dower, the income of one third from his realty, and to each
of his two sons the income of another third.    By the eighth clause
he provides for the passage over to the sons of the widow's income on
her death or remarriage, leaving out of this portion of his will any
right of survivorship as between the two sons; thus making them
tenants in common during their respective lives, but with no direction
—the absence of which is significant—as to the income of the realty
during the life of the third survivor.    He suspends the power of alien-
ation of the whole only during the life of the widow.    He further,
immediately after the death of the wife and the death of the two sons,
devises and bequeaths all of his real and personal property to all of
his grandchildren, per capita, and not per stirpes.    If one son dies
without the vesting of a separate share of the realty, he has made no
provision whatever for the continued income of that share during the
life of the other son.    He does not give it to that surviving son, nor
does he anywhere indicate that either of these two sons shall have
the income of the whole in any contingency.    It may be he intended
delaying the final vesting of title until the death of the surviving
son, in order that it should be then determined what grandchildren

survived who should take by the head and not by the stock; for we cannot reasonably believe that he meant to limit the remainder to the five grandchildren living at his death, one of whom was born after he made the will, and thus exclude, not only other children born to a son who had four children, but the entire possible issue of his other son who had no children.    Hope deferred in such cases is of larger value to a father or grandfather than as to some other events of the future. Nothing in the will indicates a distinction of division between all of the grandchildren who would in the future represent that family. Words of survivorship apply only to life or death during the existence of the testator where there is an absolute gift, and never where some take a preliminary life interest after the testator has passed away. Mullarky v. Sullivan, 136 N. Y. 227, 32 N. E. 762.    We must therefore conclude that this will cannot be sustained by holding that the five living grandchildren took a vested interest at the death of the testator, and therefore, as a necessary consequence, be prepared to face the conclusion that all of the takers of at least some interest in the realty would not be known until the third death, which in all probability will be that of one of the two sons.    This consideration, however, does not destroy the power of the court to uphold the devise in the greater part of its beneficent results.    Henderson v. Henderson, supra.    When one of the sons dies, within the apparent scheme of the testator's will, the title to one-half of the realty, if he has survived his mother, may go immediately to the grandchildren then living, and so that moiety of the real estate is suspended only for two lives in being at the time the devise took effect.    Upon the death of that mother, the estate was divided into two shares, each occupied and enjoyed for life by a son, with remainder over to the grandchildren of the testator surviving at the death of the particular son.    So that by this construction neither moiety of the realty is suspended from the power of alienation beyond the life of the mother and the particular son representing the share.

We have thus effected the main intent of the testator's will,—to provide a suitable income to the widow for life, to provide the same for the two sons during their lives, such incomes enhanced by hers when she no longer needs it, and a division of the realty for the grandchildren, with no inequality between them, except a possible addition of one or more after the death of the son first dying, to a division in only the remaining share, which inequality is so remote at that distant period of time as not to seriously embarrass the conclusion reached.    It is, of course, plain that the sixth clause, directing that none of his real estate be sold until the death of his wife and two sons, must be rejected as void; nor is it an essential part of the scheme. It also follows that the personalty, the amount of which, after payment of legacies and debts, is not apparent, must go into intestacy, and be distributed under the rule in such cases.    It is somewhat singular that nowhere in the will should the testator provide for the income of that personalty, if it was of magnitude, should make no disposition of the residuary, and should only refer to this personalty in a disposing way by the casual allusion to it in combination with the realty as to the time of division.

I do not think that the last clause of the will, providing for the substitution of Samuel Schumacher, should Henry Schumacher die before the final settlement of the estate, affects the question considered. That clause has reference only to the settlement of the account of the executors as executors.    Williams v. Freeman, 98 N. Y. 577.

No question is raised by any of the counsel as to the proper construction of the fifth clause, in regard to the $2,000 fund for the boy, Hildenbrand.    There is therefore no occasion to decide as to whether the opinion of the surrogate in his construction is conclusive upon all the parties, and that construction is accordingly here adopted.

Judgment may be entered in accordance with this opinion.    Judgment accordingly.